STATE FARM FIRE & CASUALTY CO. ET AL. *v.*
TASHIRE ET AL.

No. 391.  Argued February 14–15, 1967.—Decided April 10, 1967.

524

*Otto R. Skopil, Jr.,* and *John Gordon Gearin* argued the cause and filed briefs for petitioners.

*Nick Chaivoe* and *James B. Griswold* argued the cause and filed a brief for respondents.

*Mark C. McClanahan* filed a brief for Anderson & Geary et al., as *amici curiae.*

MR. JUSTICE FORTAS delivered the opinion of the Court.

Early one September morning in 1964, a Greyhound bus proceeding northward through Shasta County, California, collided with a southbound pickup truck. Two of the passengers aboard the bus were killed. Thirty-three others were injured, as were the bus driver, the driver of the truck and its lone passenger. One of the dead and 10 of the injured passengers were Canadians; the rest of the individuals involved were citizens of five American States. The ensuing litigation led to the present case, which raises important questions concerning administration of the interpleader remedy in the federal courts.

The litigation began when four of the injured passengers filed suit in California state courts, seeking damages in excess of $1,000,000. Named as defendants were Greyhound Lines, Inc., a California corporation; Theron Nauta, the bus driver; Ellis Clark, who drove the truck; and Kenneth Glasgow, the passenger in the truck who was apparently its owner as well. Each of the individual defendants was a citizen and resident of Oregon. Before these cases could come to trial and before other suits were filed in California or elsewhere, petitioner State Farm Fire & Casualty Company, an Illinois corporation, brought this action in the nature of interpleader in the United States District Court for the District of Oregon.

In its complaint State Farm asserted that at the time of the Shasta County collision it had in force an insurance policy with respect to Ellis Clark, driver of the truck, providing for bodily injury liability up to $10,000 per person and $20,000 per occurrence and for legal representation of Clark in actions covered by the policy. It asserted that actions already filed in California and others which it anticipated would be filed far exceeded in aggregate damages sought the amount of its maximum liability under the policy. Accordingly, it paid into court the sum of $20,000 and asked the court (1) to require all claimants to establish their claims against Clark and his insurer in this single proceeding and in no other, and (2) to discharge State Farm from all further obligations under its policy—including its duty to defend Clark in lawsuits arising from the accident. Alternatively, State Farm expressed its conviction that the policy issued to Clark excluded from coverage accidents resulting from his operation of a truck which belonged to another and was being used in the business of another. The complaint, therefore, requested that the court decree that the insurer owed no duty to Clark and was not liable on the policy, and it asked the court to refund the $20,000 deposit.

Joined as defendants were Clark, Glasgow, Nauta, Greyhound Lines, and each of the prospective claimants. Jurisdiction was predicated upon 28 U. S. C. § 1335, the federal interpleader statute,[1] and upon general diversity

---

[1] 28 U. S. C. § 1335 (a) provides: "The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a . . . policy of insurance . . . of value or amount of $500 or more . . . if

"(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to

of citizenship, there being diversity between two or more of the claimants to the fund and between State Farm and all of the named defendants.

An order issued, requiring the defendants to show cause why they should not be restrained from filing or prosecuting "any proceeding in any state or United States Court affecting the property or obligation involved in this interpleader action, and specifically against the plaintiff and the defendant Ellis D. Clark." Personal service was effected on each of the American defendants, and registered mail was employed to reach the 11 Canadian claimants. Defendants Nauta, Greyhound, and several of the injured passengers responded, contending that the policy did cover this accident and advancing various arguments for the position that interpleader was either impermissible or inappropriate in the present circumstances. Greyhound, however, soon switched sides and moved that the court broaden any injunction to include Nauta and Greyhound among those who could not be sued except within the confines of the interpleader proceeding.

When a temporary injunction along the lines sought by State Farm was issued by the United States District Court for the District of Oregon, the present respondents moved to dismiss the action and, in the alternative, for a change of venue—to the Northern District of California, in which district the collision had occurred. After a hearing, the court declined to dissolve the temporary injunction, but continued the motion for a change of venue. The injunction was later broadened to include the protection sought by Greyhound, but modified to

---

be entitled to such money or property, or to any one or more of the benefits arising by virtue of any . . . policy . . . ; and if (2) the plaintiff has . . . paid . . . the amount due under such obligation into the registry of the court, there to abide the judgment of the court . . . ."

permit the filing—although not the prosecution—of suits. The injunction, therefore, provided that all suits against Clark, State Farm, Greyhound, and Nauta be prosecuted in the interpleader proceeding.

On interlocutory appeal,[2] the Court of Appeals for the Ninth Circuit reversed. 363 F. 2d 7. The court found it unnecessary to reach respondents' contentions relating to service of process and the scope of the injunction, for it concluded that interpleader was not available in the circumstances of this case. It held that in States like Oregon which do not permit "direct action" suits against insurance companies until judgments are obtained against the insured, the insurance companies may not invoke federal interpleader until the claims against the insured, the alleged tortfeasor, have been reduced to judgment. Until that is done, said the court, claimants with unliquidated tort claims are not "claimants" within the meaning of § 1335, nor are they "persons having claims against the plaintiff" within the meaning of Rule 22 of the Federal Rules of Civil Procedure.[3] *Id.,*

---

[2] 28 U. S. C. § 1292 (a) (1).

[3] We need not pass upon the Court of Appeals' conclusions with respect to the interpretation of interpleader under Rule 22, which provides that "(1) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. . . ." First, as we indicate today, this action was properly brought under § 1335. Second, State Farm did not purport to invoke Rule 22. Third, State Farm could not have invoked it in light of venue and service of process limitations. Whereas statutory interpleader may be brought in the district where any claimant resides (28 U. S. C. § 1397), Rule interpleader based upon diversity of citizenship may be brought only in the district where all plaintiffs or all defendants reside (28 U. S. C. § 1391 (a)). And whereas statutory interpleader enables a plaintiff to employ nationwide service of process (28 U. S. C. § 2361), service of process under Rule 22 is confined

at 10. In accord with that view, it directed dissolution of the temporary injunction and dismissal of the action. Because the Court of Appeals' decision on this point conflicts with those of other federal courts,[4] and concerns a matter of significance to the administration of federal interpleader, we granted certiorari. 385 U. S. 811 (1966). Although we reverse the decision of the Court of Appeals upon the jurisdictional question, we direct a substantial modification of the District Court's injunction for reasons which will appear.

to that provided in Rule 4. See generally 3 Moore, Federal Practice ¶ 22.04.

With respect to the Court of Appeals' views on Rule 22, which seem to be shared by our Brother DOUGLAS, compare *Underwriters at Lloyd's* v. *Nichols*, 363 F. 2d 357 (C. A. 8th Cir. 1966), and *A/S Krediit Pank* v. *Chase Manhattan Bank*, 155 F. Supp. 30 (D. C. S. D. N. Y. 1957), aff'd, 303 F. 2d 648 (C. A. 2d Cir. 1962), with *National Casualty Co.* v. *Insurance Co. of North America*, 230 F. Supp. 617 (D. C. N. D. Ohio 1964), and *American Indemnity Co.* v. *Hale*, 71 F. Supp. 529 (D. C. W. D. Mo. 1947). See also 3 Moore, Federal Practice ¶ 22.04, at 3008 and n. 4.

[4] See, *e. g.*, *Travelers Indemnity Co.* v. *Greyhound Lines, Inc.*, 260 F. Supp. 530 (D. C. W. D. La. 1966); *Commercial Union Insurance Co. of New York* v. *Adams*, 231 F. Supp. 860 (D. C. S. D. Ind. 1964); *Pan American Fire & Casualty Co.* v. *Revere*, 188 F. Supp. 474 (D. C. E. D. La. 1960); *Onyx Refining Co.* v. *Evans Production Corp.*, 182 F. Supp. 253 (D. C. N. D. Tex. 1959). Although *Travelers* and *Revere* were brought in Louisiana, a State which authorizes "direct action" suits against insurance companies, the statute was not relied upon in *Travelers* (see 260 F. Supp., at 533, n. 3), and furnished only an alternative ground in *Revere* (see 188 F. Supp., at 482–483).

The only post-1948 case relied upon by the Court of Appeals and respondents, *National Casualty Co.* v. *Insurance Co. of North America*, 230 F. Supp. 617 (D. C. N. D. Ohio 1964), turns out to be of little assistance with respect to statutory interpleader since that court denied statutory interpleader solely on the ground that all claimants were citizens of Ohio and hence lacked the required diversity of citizenship. *Id.*, at 619.

## I.

Before considering the issues presented by the petition for certiorari, we find it necessary to dispose of a question neither raised by the parties nor passed upon by the courts below. Since the matter concerns our jurisdiction, we raise it on our own motion. *Treinies* v. *Sunshine Mining Co.*, 308 U. S. 66, 70 (1939). The interpleader statute, 28 U. S. C. § 1335, applies where there are "Two or more adverse claimants, of diverse citizenship . . . ." This provision has been uniformly construed to require only "minimal diversity," that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens.[5] The language of the statute, the legislative purpose broadly to remedy the problems posed by multiple claimants to a single fund, and the consistent judicial interpretation tacitly accepted by Congress, persuade us that the statute requires no more. There remains, however, the question whether such a statutory construction is consistent with Article III of our Constitution, which extends the federal judicial power to "Controversies . . . between Citizens of different States . . . and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects." In *Strawbridge* v. *Curtiss*, 3 Cranch 267 (1806), this Court held that the diversity of citizenship statute required "complete diversity": where co-citizens appeared on both sides of a dispute,

---

[5] See, *e. g., Haynes* v. *Felder,* 239 F. 2d 868, 872–875 (C. A. 5th Cir. 1957); *Holcomb* v. *Aetna Life Insurance Co.,* 255 F. 2d 577, 582 (C. A. 10th Cir.), cert. denied *sub nom. Fleming* v. *Aetna Life Insurance Co.,* 358 U. S. 879 (1958); *Cramer* v. *Phoenix Mut. Life Ins. Co.,* 91 F. 2d 141, 146–147 (C. A. 8th Cir.), cert. denied, 302 U. S. 739 (1937); *Commercial Union Insurance Co. of New York* v. *Adams,* 231 F. Supp. 860, 863 (D. C. S. D. Ind. 1964); 3 Moore, Federal Practice ¶ 22.09, at 3033.

jurisdiction was lost.  But Chief Justice Marshall there purported to construe only "The words of the act of congress," not the Constitution itself.[6]  And in a variety of contexts this Court and the lower courts have concluded that Article III poses no obstacle to the legislative extension of federal jurisdiction, founded on diversity, so long as any two adverse parties are not co-citizens.[7] Accordingly, we conclude that the present case is properly in the federal courts.

## II.

We do not agree with the Court of Appeals that, in the absence of a state law or contractual provision for

---

[6] Subsequent decisions of this Court indicate that *Strawbridge* is not to be given an expansive reading.  See, *e. g.*, *Louisville Railroad Co.* v. *Letson,* 2 How. 497, 554–556 (1844), expressing the view that in 1839 Congress had in fact acted to "rid the courts of the decision in the case of Strawbridge and Curtis." *Id.*, at 556.

[7] See, *e. g.*, *American Fire & Cas. Co.* v. *Finn,* 341 U. S. 6, 10, n. 3 (1951), and *Barney* v. *Latham,* 103 U. S. 205, 213 (1881), construing the removal statute, now 28 U. S. C. § 1441 (c); *Supreme Tribe of Ben-Hur* v. *Cauble,* 255 U. S. 356 (1921), concerning class actions; *Wichita R. R. & Light Co.* v. *Public Util. Comm.,* 260 U. S. 48 (1922), dealing with intervention by co-citizens.  Full-dress arguments for the constitutionality of "minimal diversity" in situations like interpleader, which arguments need not be rehearsed here, are set out in Judge Tuttle's opinion in *Haynes* v. *Felder,* 239 F. 2d, at 875–876; in Judge Weinfeld's opinion in *Twentieth Century-Fox Film Corp.* v. *Taylor,* 239 F. Supp. 913, 918–921 (D. C. S. D. N. Y. 1965); and in ALI, Study of the Division of Jurisdiction Between State and Federal Courts 180–190 (Official Draft, Pt. 1, 1965); 3 Moore, Federal Practice ¶ 22.09, at 3033–3037; Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L. J. 377, 393–406 (1940); Chafee, Interpleader in the United States Courts, 41 Yale L. J. 1134, 1165–1169 (1932).  We note that the American Law Institute's proposals for revision of the Judicial Code to deal with the problem of multiparty, multijurisdiction litigation are predicated upon the permissibility of "minimal diversity" as a jurisdictional basis.

"direct action" suits against the insurance company, the company must wait until persons asserting claims against its insured have reduced those claims to judgment before seeking to invoke the benefits of federal interpleader. That may have been a tenable position under the 1926 [8] and 1936 interpleader statutes.[9] These statutes did not carry forward the language in the 1917 Act authorizing interpleader where adverse claimants "may claim" benefits as well as where they "are claiming" them.[10] In 1948, however, in the revision of the Judicial Code, the "may claim" language was restored.[11] Until the decision below, every court confronted by the question has concluded that the 1948 revision removed whatever requirement there might previously have been that the insurance com-

---

[8] 44 Stat. 416 (1926), which added casualty companies to the enumerated categories of plaintiffs able to bring interpleader, and provided for the enjoining of proceedings in other courts.

[9] 49 Stat. 1096 (1936), which authorized "bills in the nature of interpleader," meaning those in which the plaintiff is not wholly disinterested with respect to the fund he has deposited in court. See Chafee, The Federal Interpleader Act of 1936: I, 45 Yale L. J. 963 (1936).

[10] 39 Stat. 929 (1917). See *Klaber v. Maryland Casualty Co.*, 69 F. 2d 934, 938–939 (C. A. 8th Cir. 1934), which held that the omission in the 1926 Act of the earlier statute's "may claim" language required the denial of interpleader in the face of unliquidated claims (alternative holding).

[11] Although the Reviser's Note did not refer to the statutory change or its purpose, we have it on good authority that it was the omission in the Note rather than the statutory change which was inadvertent. See 3 Moore, Federal Practice ¶ 22.08, at 3025–3026, n. 13. And it was widely assumed that restoration of the "may claim" language would have the effect of overruling the holding in *Klaber, supra*, that one may not invoke interpleader to protect against unliquidated claims. See, e. g., Chafee, 45 Yale L. J., at 1163–1167; Chafee, Federal Interpleader Since the Act of 1936, 49 Yale L. J. 377, 418–420 (1940). In circumstances like these, the 1948 revision of the Judicial Code worked substantive changes. *Ex parte Collett*, 337 U. S. 55 (1949).

pany wait until at least two claimants reduced their claims to judgments.[12]  The commentators are in accord.[13]

Considerations of judicial administration demonstrate the soundness of this view which, in any event, seems compelled by the language of the present statute, which is remedial and to be liberally construed.  Were an insurance company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims.  The difficulties such a race to judgment pose for the insurer,[14] and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy.[15]

## III.

The fact that State Farm had properly invoked the interpleader jurisdiction under § 1335 did not, however, entitle it to an order both enjoining prosecution of suits against it outside the confines of the interpleader proceeding and also extending such protection to its insured, the alleged tortfeasor.  Still less was Greyhound Lines entitled to have that order expanded so as to protect itself and its driver, also alleged to be tortfeasors, from suits brought by its passengers in various state or federal courts.  Here, the scope of the litigation, in terms of

[12] See cases listed in n. 4.

[13] 3 Moore, Federal Practice ¶ 22.08, at 3024–3025; Keeton, Preferential Settlement of Liability-Insurance Claims, 70 Harv. L. Rev. 27, 41–42 (1956).

[14] See Keeton, op. cit. supra, n. 13.

[15] The insurance problem envisioned at the time was that of an insurer faced with conflicting but mutually exclusive claims to a policy, rather than an insurer confronted with the problem of allocating a fund among various claimants whose independent claims may exceed the amount of the fund. S. Rep. No. 558, 74th Cong., 1st Sess., 2–3, 7, 8 (1935); Chafee, Modernizing Interpleader, 30 Yale L. J. 814, 818–819 (1921).

parties and claims, was vastly more extensive than the confines of the "fund," the deposited proceeds of the insurance policy. In these circumstances, the mere existence of such a fund cannot, by use of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund.

There are situations, of a type not present here, where the effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to one or the other of the claimants.[16] In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy. It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation. In this context, the suits sought to be enjoined are squarely within the language of 28 U. S. C. § 2361, which provides in part:

> "In any civil action of interpleader or in the nature of interpleader under section 1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting *any proceeding* in any State or United States court *affecting the property, instrument or obligation involved in the interpleader action* . . . ."
> (Emphasis added.)

But the present case is another matter. Here, an accident has happened. Thirty-five passengers or their representatives have claims which they wish to press against a variety of defendants: the bus company, its driver, the owner of the truck, and the truck driver. The circumstance that one of the prospective defendants hap-

---

[16] This was the classic situation envisioned by the sponsors of interpleader. See n. 15, *supra*.

pens to have an insurance policy is a fortuitous event which should not of itself shape the nature of the ensuing litigation. For example, a resident of California, injured in California aboard a bus owned by a California corporation should not be forced to sue that corporation anywhere but in California simply because another prospective defendant carried an insurance policy. And an insurance company whose maximum interest in the case cannot exceed $20,000 and who in fact asserts that it has no interest at all, should not be allowed to determine that dozens of tort plaintiffs must be compelled to press their claims—even those claims which are not against the insured and which in no event could be satisfied out of the meager insurance fund—in a single forum of the insurance company's choosing. There is nothing in the statutory scheme, and very little in the judicial and academic commentary upon that scheme, which requires that the tail be allowed to wag the dog in this fashion.

State Farm's interest in this case, which is the fulcrum of the interpleader procedure, is confined to its $20,000 fund. That interest receives full vindication when the court restrains claimants from seeking to enforce against the insurance company any judgment obtained against its insured, except in the interpleader proceeding itself. To the extent that the District Court sought to control claimants' lawsuits against the insured and other alleged tortfeasors, it exceeded the powers granted to it by the statutory scheme.

We recognize, of course, that our view of interpleader means that it cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort. But interpleader was never intended to perform such a function, to be an all-purpose "bill of peace." [17] Had

---

[17] There is not a word in the legislative history suggesting such a purpose. See S. Rep. No. 558, 74th Cong., 1st Sess. (1935). And Professor Chafee, upon whose work the Congress heavily

it been so intended, careful provision would necessarily have been made to insure that a party with little or no interest in the outcome of a complex controversy should not strip truly interested parties of substantial rights—such as the right to choose the forum in which to establish their claims, subject to generally applicable rules of jurisdiction, venue, service of process, removal, and change of venue. None of the legislative and academic sponsors of a modern federal interpleader device viewed their accomplishment as a "bill of peace," capable of sweeping dozens of lawsuits out of the various state and federal courts in which they were brought and into a single interpleader proceeding. And only in two reported instances has a federal interpleader court sought to control the underlying litigation against alleged tortfeasors as opposed to the allocation of a fund among successful tort plaintiffs. See *Commercial Union Insurance Co. of New York* v. *Adams,* 231 F. Supp. 860 (D. C. S. D. Ind. 1964) (where there was virtually no objection and where all of the basic tort suits would in any event have been prosecuted in the forum state), and *Pan American Fire & Casualty Co.* v. *Revere,* 188 F. Supp. 474 (D. C. E. D. La. 1960). Another district court, on the other hand, has recently held that it lacked statutory authority to

depended, has written that little thought was given to the scope of the "second stage" of interpleader, to just what would be adjudicated by the interpleader court. See Chafee, Broadening the Second Stage of Federal Interpleader, 56 Harv. L. Rev. 929, 944–945 (1943). We note that in Professor Chafee's own study of the bill of peace as a device for dealing with the problem of multiparty litigation, he fails even to mention interpleader. See Chafee, Some Problems of Equity 149–198 (1950). In his writing on interpleader, Chafee assumed that the interpleader court would allocate the fund "among all the claimants who get judgment within a reasonable time . . . ." Chafee, The Federal Interpleader Act of 1936: II, 45 Yale L. J. 1161, 1165 (1936). See also Chafee, 49 Yale L. J., at 420–421.

enjoin suits against the alleged tortfeasor as opposed to proceedings against the fund itself. *Travelers Indemnity Co. v. Greyhound Lines, Inc.*, 260 F. Supp. 530 (D. C. W. D. La. 1966).

In light of the evidence that federal interpleader was not intended to serve the function of a "bill of peace" in the context of multiparty litigation arising out of a mass tort, of the anomalous power which such a construction of the statute would give the stakeholder, and of the thrust of the statute and the purpose it was intended to serve, we hold that the interpleader statute did not authorize the injunction entered in the present case. Upon remand, the injunction is to be modified consistently with this opinion.[18]

---

[18] We find it unnecessary to pass upon respondents' contention, raised in the courts below but not passed upon by the Court of Appeals, that interpleader should have been dismissed on the ground that the 11 Canadian claimants are "indispensable parties" who have not been properly served. The argument is that 28 U. S. C. § 2361 provides the exclusive mode of effecting service of process in statutory interpleader, and that § 2361—which authorizes a district court to "issue its process for all claimants" but subsequently refers to service of "such process" by marshals "for the respective districts where the claimants reside or may be found"—does not permit service of process beyond the Nation's borders. Since our decision will require basic reconsideration of the litigation by the parties as well as the lower courts, there appears neither need nor necessity to determine this question at this time. We intimate no view as to the exclusivity of § 2361, whether it authorizes service of process in foreign lands, whether in light of the limitations we have imposed on the interpleader court's injunctive powers the Canadian claimants are in fact "indispensable parties" to the interpleader proceeding itself, or whether they render themselves amenable to service of process under § 2361 when they come into an American jurisdiction to establish their rights with respect either to the alleged tortfeasors or to the insurance fund. See 2 Moore, Federal Practice ¶ 4.20, at 1091–1105.

## IV.

The judgment of the Court of Appeals is reversed, and the case is remanded to the United States District Court for proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE DOUGLAS, dissenting in part.

While I agree with the Court's view as to "minimal diversity" and that the injunction, if granted, should run only against prosecution of suits against the insurer, I feel that the use which we today allow to be made of the federal interpleader statute,[1] 28 U. S. C. § 1335, is, with all deference, unwarranted. How these litigants are "claimants" to this fund in the statutory sense is indeed a mystery. If they are not "claimants" of the fund,[2] neither are they in the category of those who "are claiming" or who "may claim" to be entitled to it.

---

[1] "(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more . . . if

"(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property . . . into the registry of the court, there to abide the judgment of the court . . . ."

[2] Under the policy issued by State Farm, it promises "[t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons . . . caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned automobile . ." The insured will "become legally

This insurance company's policy provides that it will "pay on behalf of the insured all sums which the insured shall become legally obligated to pay." To date the insured has not become "legally obligated" to pay any sum to any litigant. Since nothing is owed under the policy, I fail to see how any litigant can be a "claimant" as against the insurance company. If that is doubtful the doubt is resolved by two other conditions:

(1) The policy states "[n]o action shall lie against the company . . . until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

(2) Under California law where the accident happened and under Oregon law where the insurance contract was made, a direct action against the insurer is not allowable until after a litigant receives a final judgment against the insured.[3]

Thus under this insurance policy as enforced in California and in Oregon a "claimant" against the insured can become a "claimant" against the insurer only after final judgment against the insured or after a consensual written agreement of the insurer, a litigant, and the insured. Neither of those two events has so far happened.[4]

---

obligated to pay" only if he has been found to be at fault for the accident, or if the victim's claim has been settled in accord with the policy terms. The claim against the insurance company is thus contingent on a finding that the insured was at fault or a settlement. This is unlike the situation where the insurance company has issued a policy such as a workmen's compensation policy which insures the insured for liability imposed in the absence of fault.

[3] See Calif. Ins. Code § 11580 (b)(2); Ore. Rev. Stat. § 23.230.

[4] In those States having a direct-action statute, allowing an action against the insurer prior to judgment against the insured, interpleader jurisdiction can be sustained absent a judgment against the insured. The direct-action statute gives the injured party the status of a "claimant" against the insurer. See, e. g., *Pan American Fire & Casualty Co.* v. *Revere*, 188 F. Supp. 474, 482-483.

This construction of the word "claimant" against the fund is borne out, as the Court of Appeals noted, by Rule 22 (1) of the Federal Rules of Civil Procedure.[5] That Rule, also based on diversity of citizenship, differs only in the district where the suit may be brought and in the reach of service of process, as the Court points out.[6] But it illuminates the nature of federal interpleader for it provides that only "persons having claims against the plaintiff [insurer] may be joined as defendants and required to interplead."

Can it be that we have two kinds of interpleader statutes as between which an insurance company can choose: one that permits "claimants" against the insurer ("persons having claims against the plaintiff") to be joined and the other that permits "claimants" against the insured to be joined for the benefit of the insurer even though they may never be "claimants" against the insurer? I cannot believe that Congress launched such an irrational scheme.

The Court rests heavily on the fact that the 1948 Act contains the phrase "may claim," while the 1926 and 1936 interpleader statutes contained the phrase "are claiming." From this change in language the Court infers that Congress intended to allow an insurance company to interplead even though a judgment has not been entered against the insured and there is no direct-action statute. This inference is drawn despite the fact that the Reviser's Note contains no reference to the change in wording or its purpose; the omission is dismissed as "inadvertent." But it strains credulity to suggest

---

[5] Rule 22 (1) provides in part:

"Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."

[6] See n. 3 of the Court's opinion.

that mention would not have been made of such a drastic change, if in fact Congress intended to make it. And, despite the change in wording, under the 1948 Act there must be "adverse claimants . . . [who] are claiming or may claim to be entitled to such money . . . , or to any one or more of the benefits arising by virtue of any . . . policy . . . ." Absent a direct-action statute, the victims are not "claimants" against the insurer until their claims against the insured have been reduced to judgment. Understandably, the insurance company wants the best of two worlds. It does not want an action against it until judgment against its insured. But, at the same time, it wants the benefits of an interpleader statute. Congress could of course confer such a benefit. But it is not for this Court to grant dispensations from the effects of the statutory scheme which Congress has erected.

I would construe its words in the normal sense and affirm the Court of Appeals.