J. L. JOHNSTON and United States Fidelity & Guaranty Company, Appellants,

v.

ALL STATE ROOFING & PAVING COMPANY, INC., Appellee.

No. 2757.

Supreme Court of Alaska.

Dec. 22, 1976.

Richard F. Lytle, of Lytle & Associates, Anchorage, for appellants.

Frederick W. Ledbetter and Paul J. Nangle of Paul J. Nangle & Associates, Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

OPINION

RABINOWITZ, Justice.

This appeal presents one of the few occasions on which this court has been afforded the opportunity to explicate upon Alaska's Rule of Civil Procedure providing for interpleader.

Appellant Johnston, a developer and general contractor, entered into a contract with appellee All State for certain asphalt and paving work on the former's Woodside Village Project. All State subsequently contracted with several subcontractors and material suppliers to assist it in meeting its contract obligations. Approximately 10 days after it commenced work, All State

received $44,564.36 in partial payment. Upon completion of the contract on October 18, 1974, All State notified Johnston that it claimed $157,655.43 was due under the terms of their agreement. Johnston disputed this amount, asserting that only $92,689 was due under the contract.

All State then instituted an action in the superior court against Johnston and its surety, U.S.F. & G.[1] The latter were also sued in separate actions by two of All State's unpaid subcontractors. While the three suits were pending, Johnston filed a separate interpleader action in which All State and all its creditors were named, and deposited the sum of $92,960 in the registry of the superior court.[2] In this interpleader action, Johnston explicity admitted that $92,689 was owed to All State. Johnston then moved to consolidate the interpleader action with the three related but separate pending superior court cases. Before a ruling was had on the consolidation motion, the Internal Revenue Service caused the interpleader action to be removed to federal court.[3]

After Johnston's motion to consolidate had been filed, All State moved for partial summary judgment in the case it originally filed against Johnston (No. 75–1956). The motion was grounded on Johnston's admission in the interpleader action that he owed All State $92,689. At this point in the procedural history of the matter, it appears that Superior Court Judge James Singleton granted Johnston's motion to consolidate the separate suits.[4] Four days later Superior Court Judge Justin Ripley

1. This suit filed by All State received the designation No. 75–1956, Superior Court for the State of Alaska, Third Judicial District.

2. Johnston's interpleader action received the designation No. 75–3885, Superior Court for the State of Alaska, Third Judicial District.

3. The Internal Revenue Service was one of All State's creditors and had perfected an outstanding lien on the Woodside Village

Project. Ultimately, a judgment for some $39,000 was rendered for the I.R.S. against All State, and that amount was deducted from the $92,960. Subsequently, the balance of the $92,960 and the interpleader action were remanded to Alaska's superior court.

4. The consolidation order was entered in All State's case, No. 75–1956.

granted partial summary judgment in the amount of $100,662.93.[5]

Johnston thereafter brought the instant appeal, claiming he had previously paid the amount owed All State into the superior court registry in the interpleader action. Johnston further asserts that as the matter now stands the superior court's entry of a partial summary judgment renders it liable to All State for an additional $92,689, or a grand total of approximately $208,460.[6] Thus, the crux of Johnston's complaint here is that the effect of the superior court's entry of judgment for $92,689 is to permit All State to seek execution over and above the amount of $92,689, which Johnston deposited in the registry of the superior court, without affording Johnston the opportunity to litigate the question of whether or not he is indebted to All State for any part of the $64,966.43 the latter contends is still due and owing. In addition to asserting that the granting of the motion for partial summary judgment ex-

poses him to multiple liability on the same claim, Johnston also advanced the separate specification of error that the trial court abused its discretion in awarding All State $2,500 in attorney's fees in conjunction with its entry of partial summary judgment.

We now turn to Johnston's first specification of error and Rule 22, Rules of Civil Procedure. This interpleader rule parallels the federal rule of procedure governing interpleader. It provides:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not lia-

---

5. At the request of All State a final judgment was entered pursuant to Civil Rule 54(b). The component parts of the judgment entered by the superior court are as follows:

| | |
|---|---|
| $ 92,689.00 | admitted owed by Johnston under his contract with All State. |
| 5,414.18 | interest at 6% from 11/1/74 to 10/23/75. (We note that Johnston does not contest this amount in this appeal.) |
| 59.75 | costs. |
| 2,500.00 | attorney fees. |
| TOTAL JUDGMENT $100,662.93 | |

---

6. Execution upon the partial summary judgment has been stayed pending resolution of this appeal. In effect, the trial court concluded it did not have the authority to prevent execution of the judicial summary judgment. This is reflected in the following exchange between the court and counsel for Johnston.

THE COURT: . . . I can't issue an order which says, I find the limit of your liability in this matter.

MR. LYTLE: No we're not—we're not

. . . .

THE COURT: . . . to be 92,000. I'm saying that the one small tip of this

iceberg, which is this massive consolidated case, the only tip of the iceberg that I see this morning, has you and Mr. Nangle standing on top of it and you're arguing about—as between the 2 of you, have you —or as between the pleadings which have run between the 2 of you, is there any genuine issue of material fact remaining and if there isn't, and you pretty well agree that as to that 92,000 there isn't—you totally agree—would he be entitled to judgment as a matter of law and the answer to that is obviously, yes.

ble in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.[7]

■ Professors Wright and Miller point out that the "admirable remedy" of interpleader has been in existence for over 600 years. Its origins are found in the practice of common law courts which allowed a defendant, in a limited number of circumstances, to protect himself from double vexation upon a single liability.[8] This procedural development by the common law courts is reflective of the underlying purpose of interpleader, which is to prevent the interpleading party or stakeholder, from being exposed to multiple liability and vexatious litigation.[9] To this end the interpleader rule is to be liberally construed.[10]

■ Interpleader relieves the stakeholder from the obligation of determining at his peril which claimant may ultimately prevail, as well as preventing multiple liability which could flow from adverse rulings in different courts.[11] Thus, Professors Wright and Miller conclude that ". . . interpleader can be employed to reach an early and effective determination of disputed questions with a consequent saving of trouble and expense for the parties,"[12] not to mention the resultant conservation of judicial resources.

■ The fact that Johnston contests his alleged obligation to pay any amounts to All State over and above the $92,689 he deposited in the court registry does not make interpleader relief unavailable. For it has been held that the stakeholder may make a deposit or post a bond without waiving his contentions that he is not liable to any of the claimants, or that he is not liable for the full amount of the deposit.[13]

■ With these general principles of interpleader in mind, we return to the somewhat confused procedural context which is presented in the case at bar. We are of the view that the superior court's grant of partial summary judgment, apparently without recognition of the fact that All State's suit against Johnston had been consolidated with Johnston's interpleader action, as well as with the two actions instituted by creditors of All State, had the effect of undercutting the salutary remedial goals of interpleader and joinder of parties. There has been a consistent judicial trend encouraging the use of interpleader and joinder of parties. As a matter of judicial administration, we think these policies should be effectuated whenever appro-

---

7. Alaska Civil Rule 22 is identical to Federal Civil Rule 22. We adopt the federal cases as persuasive as to the rule.

8. 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1701, at 350 (1972). According to the authors the earliest reported instance of relief similar to interpleader at law is found in *Newmarket v. Boville*, which is reprinted in Selden Society, 1918, a decision by the Court of Common Pleas.

9. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 534, 87 S.Ct. 1199, 18 L.Ed.2d 270, 277 (1967). According to Professor Moore: Interpleader is a procedural device which enables a person holding money or property, in the typical case conceded to belong in whole or in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund.

3A J. Moore, Federal Practice ¶ 22.02[1], at 3003 (2d ed. 1974).

10. *See Underwriters at Lloyd's v. Nichols*, 363 F.2d 357 (8th Cir. 1966), which contains a good discussion of the evolution of Federal Rule of Civil Procedure 22.

11. 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1702, at 362–63 (1972).

12. *Id.* at 363–64.

13. *Moseley v. Sunshine Biscuits, Inc.*, 110 F. Supp. 157 (W.D.Mo.1952); *John Hancock Mut. Life Ins. Co. v. Yarrow*, 95 F.Supp. 185 (E.D.Pa.1951). *See also* 7 C. Wright & A. Miller Federal Practice and Procedure: Civil § 1746, at 460 (1972).

priate. Nonetheless, the foregoing is not controlling in our disposition of this appeal. For we have concluded that the superior court's entry of partial summary judgment was basically correct, but must be modified in order to obviate the basically unjust consequences which flow from the judgment as it presently stands.[14]

Earlier we indicated that although Johnston paid the sum of $92,689 into the registry of the court, All State asserts that Johnston owed it a total of $157,655.43 upon completion of the contract, thus leaving the amount of $64,966.43 in dispute. Despite the fact that the superior court knew at the time it entered the partial summary judgment that the case had been consolidated; that a remand from the federal court was imminent; and that counsel for All State intended to execute on the partial summary judgment until a total of $157,655.43 had been obtained, the trial court failed to impose any limitation or condition upon its grant of summary judgment. In order to accord justice to Johnston, we hold that the superior court's partial summary judgment entered in the amount of $100,662.93 is modified to reflect that it is deemed partially satisfied to the extent of $92,689, the amount Johnston previously deposited in the registry of the court.[15] Upon remand the superior court is to determine what additional amounts, if any, are owed by Johnston to All State.

■ Regarding Johnston's claim that the superior court abused its discretion in awarding All State $2,500 in attorney's fees, we have reviewed the record in light of the well established criteria regarding attorney's fees and conclude that the superior court did not commit an abuse of discretion. All State filed its suit prior to the filing of the interpleader action. Accordingly, it was entitled to an attorney's fee on the partial summary judgment awarded. The court apparently exercised its discretion in allowing a lesser sum than that specified in the schedule set forth in Rule 82(a)(1).

The superior court's award of attorney's fees is affirmed and its grant of partial summary judgment, as modified, is affirmed and the matter remanded for trial of the contested amount of $64,966.43 claimed by All State, and for such other proceedings as are deemed necessary.

---

14. The award of partial summary judgment would have been correct except for its effect in this case of subjecting one party to potential multiple liability. There was no genuine issue as to any material fact as to the owing of the $92,689—both parties agreed that it was owed—a critical factor in whether summary judgment is granted or denied.

15. In other words, All State's right to execute on the partial summary judgment is limited to the difference between what is owing on the $100,662.93 judgment less $92,689. This is in accord with one of the primary functions of interpleader actions, which is to protect the stakeholder from double liability on the funds at issue. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967).