In re ASBESTOS SCHOOL LITIGATION.

This Document Relates to: All Actions.

No. 83–0268.

United States District Court, E.D. Pennsylvania.

Aug. 2, 1985.

David Berger, Herbert P. Newberg, Philadelphia, Pa., for plaintiffs.

Lawrence T. Hoyle, Jr., Philadelphia, Pa., for defendants (who do not oppose court's Order of April 13, 1984).

Ralph W. Brenner, Philadelphia, Pa., for defendants (who oppose the court's Order of April 13, 1984).

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Presently before me is stipulating defendants'[1] motion for a preliminary injunction.[2] Stipulating defendants seek to enjoin Spartanburg County, South Carolina School District Seven (School District) whose case is listed for trial on August 5, 1985,[3] from: introducing any evidence that is relevant solely to plaintiffs' punitive damages claims; arguing the punitive damage claim to the jury; and requesting that the jury be charged on the issue of punitive damages.

In my Memorandum and Order of September 28, 1984, 104 F.R.D. 422, I certified the class as to punitive damages, under Fed.R.Civ.P. 23(b)(1)(B) which, although allowing a plaintiff class member to opt out of the punitive damage class, I restricted the remedies available to the party who opted out by prohibiting separate litigation of punitive damages.[4] 104 F.R.D. at 438. The essence of my ruling was fairness to the defendants as well as to the plaintiffs.

The purpose of punitive damages claims "are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974); *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 48, 99 S.Ct. 2121, 2125, 60 L.Ed.2d 698 (1979). Plaintiff School District has contended that South Carolina law would apply to the products liability suit which was brought in the District Court of South Carolina because of the various contacts plaintiff has with the state. I do not rule on this matter, but for the instant matter I will assume that South Carolina law applies. Plaintiff School District argues in its brief in opposition to the instant motion that South Carolina law is distinguishable from the general premise of punitive damages. Plaintiff suggests that punitive damages under South Carolina law are compensatory in nature, in that it compensates for a right of a party which is taken away. Plaintiff cites, *inter alia, Oliver v. Columbia, N. & L.R. Co.*, 65 S.C. 1, 43 S.E. 307 (S.C.1902) to support its position. I do not agree with plaintiff's argument. The Supreme Court of South Carolina in *Oliver* overruled exceptions to the trial court's charge to the jury concerning punitive damages. *Id.* at 320–323. The portion of the jury charge which was the focus of the exception stated:

1. National Gypsum Company and United States Gypsum Company. Although W.R. Grace & Co. was included in the original motion, because the instant matter only concerns the two above mentioned firms, W.R. Grace & Co. was withdrawn as a movant on the instant matter before me.

2. On August 1, 1985 a telephone conference was afforded the parties concerning a temporary restraining order in this matter; the parties agreed that the telephone conference, in which argument was entertained by the court, would be in place of a hearing for preliminary injunction. The parties agreed a separate hearing for a preliminary injunction is not required.

3. *Spartanburg County School District Seven v. National Gypsum Company and United States Gypsum Company,* No. 83–1744–14 (D.S.C.).

4. I imposed no restriction as to the compensatory claims.

The second kind of damages, called "punitive damages", are sometimes spoken of as "vindictive damages" and "exemplary damages." Indeed, they are sometimes referred to as "smart money" and "blood money." They are called "punitive damages" because of the theory that such damages will act as a sort of punishment of the defendant for such wrongdoing; not only as a punishment for past wrongdoing, but to deter the defendant and others in similar business from repeating such wrongdoing in the future. Such damages are allowed in law, and they operate almost like fines in the criminal court. They are allowed not so much to compensate the plaintiff or to enrich the plaintiff, but for the public good, to punish the defendant.

\* \* \* \* \* \*

Therefore, gentlemen, if in this case it is established to your satisfaction, by the preponderance of the evidence, then your verdict would be a sum of money representing not only actual injury sustained, or compensation for this injury, but also an additional amount, as I have said before, to punish the defendant, to make an example, so as to keep the defendant and others in the same kind of business from such wrongdoing, if such be proven.

*Oliver* at 320–321.

The Supreme Court of South Carolina in *Oliver* commented on the jury charge, indeed upholding it:

"Exemplary or punitive damages go to the plaintiff, not as a fine or penalty for a public wrong, but in vindication of a private right which has been willfully invaded; and, indeed, it may be said that such damages in a measure compensate or satisfy for the willfulness with which the private right was invaded, but, in addition thereto, operating as a deterring punishment to a wrongdoer and as a warning to others." While, therefore, exemplary damages are not awarded "as a fine or penalty for a public wrong," they are awarded as a "punishment" to

the wrongdoer for the willful invasion of a private right, "and as a warning to others." And this, as Judge Benet charged, is "for public good,"—an example—"for the benefit of others." These two exceptions are overruled.

*Id.* at 321–322 (citations omitted).

Indeed, all the court was stating was that the private person/party who was injured had the right/standing to sue for punitive damages, rather than the general public. However, the purpose of punitive damages is to provide for the benefit of the public. *See also Rogers v. Florence Printing Company*, 233 S.C. 567, 106 S.E.2d 258, 261 (1958) (Individual has standing to bring punitive damage claim rather than public; punitive damages are gauged or allocated as to the "willfulness" of a defendant and operate to punish·the wrongdoer, and warn others).

■ In certain situations where wanton or intentional wrongdoings are found, punitive damage claims may arise to a "right" of a plaintiff; however, equally balanced against this "right", is the obligation that the defendant be punished fairly. *In Re Asbestos School Litigation*, 104 F.R.D. 422, 434–438 (E.D.Pa.1984). Fairness is the cornerstone of equity. Thus, the fairness which defendant receives in not being subject to successive claims to punish for purported wrongs also benefits the many plaintiffs who may be late comers seeking punitive damages when the "pot of gold is gone".[5]

■ Indeed, the fairness which I seek in this action concerning punitive damages is analogous to the equitable devices such as an interpleader action or bill of peace. *Cf. Boice v. Boice*, 48 F.Supp. 183, 186 (D.N.J. 1943) ("Interpleader is a well-established equitable remedy ..." *quoting* Judge Maris in *Metropolitan Life Ins. Co. v. Mason*, 21 F.Supp. 704, 706 (E.D.Pa.1937)) *aff'd.* 135 F.2d 919 (3d Cir.1943).

---

**5.** Either the assets of defendants will be exhausted, or courts will hold that defendants have been sufficiently punished. *See In Re School Asbestos Litigation*, 104 F.R.D. at 434.

876

The Supreme Court in *State Farm Fire & Casualty v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967) observed:

There are situations, of a type not present here, where the effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to one or the other of the claimants. In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy. It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation.

*Id.* at 534, 87 S.Ct. at 1205. (footnote omitted).

The imposition of the injunction implicit in my Pretrial Order No. 20, precluding separate suits for punitive damages is as much a product of fairness and due process as it is of equity.

The plaintiffs[6] here contend that the United States Supreme Court holding in *Phillips Petroleum Company v. Shutts*, — U.S. ——, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985) compels the denial of the instant motion. The Court in *Shutts* was faced, *inter alia*, with the issue of whether or not a state court presiding over a class action for damages can exercise jurisdiction over out of state class plaintiffs who do not voluntarily subject themselves to the court's jurisdiction. The Court held:

[T]hat a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant. If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law,[3] it must provide minimum procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation,

whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court. Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members.

———
[3] Our holding today is limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments. *We intimate no view concerning other types of class action lawsuits, such as those seeking equitable relief.* Nor, of course, does out discussion of personal jurisdiction address class actions where the jurisdiction is asserted against a *defendant* class.

*Id.* at ——, 105 S.Ct. at 2975 (citation omitted) (emphasis added and in original).

The caveat expressed by the *Shutts* Court in footnote three suggests possible variances of the obligations plaintiffs may be burdened with to fulfill due process where the relief sought is different than compensatory damages. Here the 23(b)(1) class for punitive damages does not preclude opting out, but rather precludes the party which opts out from individually litigating punitive damages. Punitive damages, although an ancient legal remedy, is more similar to equitable relief in that it seeks to provide for a public good as does a criminal fine. Indeed, the purpose of punitive damages is punishment and the coercive effect it may have on the rest of society. The fact that the theory of punitive damages developed on the legal side of jurisprudence rather than the equity side is not sufficient to categorize it with a suit seeking compensatory relief such as the matter in *Shutts*. The compensatory dam-

---

**6.** Including the class representative Barnwell School District.

ages portion of this class action provides all the safeguards required by the *Shutts* Court. The punitive damages portion does not provide for separate litigation outside the class. Moreover, the defendants must be given credit for any punitive damage claim that is settled outside the class. While claims for compensatory damages seek to make a plaintiff whole and, therefore, certain due process safeguards must be afforded the plaintiff, symmetry of the law would require no less when punitive damages are leveled against a defendant. Because punitive damages seek to punish and set an example, due process would require it be done fairly. In punitive damage actions it is the defendant which is the subject of the action, while in compensatory damages claims, it is the plaintiff's rights which are the subject of the action. I have provided for adequate representation of plaintiffs' cause, and notice will be provided. This is all that due process requires where it is the defendants' rights which are the subject of the punitive damages claims.

An appropriate order follows.

## ORDER NO. 52

AND NOW, this 2nd day of August, 1985, in consideration of the motions of National Gypsum Company and United States Gypsum Company for an Order temporarily restraining and for a preliminary injunction enjoining Spartanburg County, South Carolina School District Seven from individually litigating its claim to punitive damages against these defendants, and the responses filed thereto, and after telephone conference with counsel, for the reasons set forth in the foregoing Memorandum, it is ORDERED that:

1. Spartanburg County, South Carolina School District Seven is enjoined from litigating its claim to punitive damages against these defendants in any forum other than this court until such time as the court can determine whether to permanently enjoin plaintiff here from individually litigating its claim to punitive damages.

2. In the case captioned *Spartanburg County School District Seven v. National Gypsum Company and United States Gypsum Company*, No. 83–1744–14 (D.S.C.) Spartanburg County School District Seven is enjoined from introducing any evidence that is relevant solely to plaintiff's punitive damages claim, or arguing the punitive damages claim to the jury.