TOWN OF GUILFORD *v.* LESLIE D. CRISTINI ET AL.*

Superior Court        Judicial District of        File No. CV970401329S
                      New Haven

Memorandum filed November 4, 1997

*Judith A. Ravel,* for the plaintiff.

*Leslie D. Cristini,* pro se, and *Willinger, Shepro, Tower & Bucci,* for the named defendant et al.

*Lecomte, Wolf, Horowitz, Rosenthal & Ray,* for the defendant Lecomte, Wolf, Horowitz, Rosenthal & Ray.

*Mayo, Gilligan & Zito,* for the defendant Merrill Lynch Business Financial Services, Inc.

*Michelson, Kane, Royster & Barger,* for the defendant The Netherlands Insurance Company.

*Bergman, Horowitz & Reynolds,* for the defendant United States Fidelity and Guaranty Company.

BLUE, J. This interpleader action has been brought in an attempt to resolve a seemingly intractable combination of disputes over a lawsuit and its attempted settlement. For the reasons set forth below, interpleader is not an appropriate remedy under the circumstances.

---

*An appeal to the Appellate Court was filed on November 25, 1997. The appeal was subsequently withdrawn by the plaintiff on December 30, 1997.

Interpleader is an ancient equitable remedy, statutorily available in Connecticut "[w]henever any person has, or is alleged to have, any money or other property in his possession which is claimed by two or more persons . . . ." General Statutes § 52-484. "The historical and still the primary purpose of interpleader is to enable a neutral stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over the stake to the wrong party." *Indianapolis Colts* v. *Mayor of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984), cert. denied, 470 U.S. 1052, 105 S. Ct. 1753, 84 L. Ed. 2d 817 (1985). The procedure is unproblematic in the typical case just described. "Yet life heaves up atypical situations, and from them stem atypical cases . . . ." G. Hazard, Jr. & M. Moskovitz, "An Historical and Critical Analysis of Interpleader," 52 Cal. L. Rev. 706, 707 (1964). This is such a case.

The following facts appear from documents submitted by the parties at the hearing on the plaintiff's motion for interlocutory judgment and from other court records that may appropriately be judicially noticed. This case stems from a separate and still pending contract action involving two of the present parties. *Cristwood Contracting, Inc.* v. *Guilford*, Superior Court, judicial district of New Haven, Docket No. 373152 (*Cristwood* action). The *Cristwood* action was commenced on April 7, 1995, by a single plaintiff, Cristwood Contracting, Inc. (Cristwood), against a single defendant, the town of Guilford. The complaint in the *Cristwood* action contains numerous counts, but it essentially alleges a breach of a construction contract involving the renovation of a public school in Guilford.

The interpleader action now before the court has come about because a number of other entities, not (or, anyway, not yet) parties to the *Cristwood* action, have developed an interest in the outcome and proceeds of that action. Those entities are as follows: (1) Merrill

Lynch Business Financial Services, Inc. (Merrill Lynch). On May 14, 1996, Cristwood assigned Merrill Lynch "all proceeds, monies or awards . . . that come into [Cristwood's] or its agents' or attorneys' possessory control or entitlement, as a result of any settlement, mediation, or verdict arising out of or related to [the *Cristwood* action]"; (2) The Netherlands Insurance Company (Netherlands). Netherlands was the bonding company on the school project involved in the *Cristwood* action. It claims a first priority security interest in the proceeds of the *Cristwood* action; (3) United States Fidelity and Guaranty Company (Fidelity). Fidelity is a surety company. It claims to have issued payment and performance bonds for ten construction projects on which Cristwood was the general contractor. It further claims that it has rights to the proceeds of the *Cristwood* action that are superior to those of Merrill Lynch; (4) Lecomte, Wolf, Horowitz, Rosenthal and Ray, LLC (Lecomte Wolf). Lecomte Wolf is a Hartford law firm. It represented Cristwood at an early stage in the *Cristwood* action. Lecomte Wolf claims a charging lien for legal fees on the proceeds of the *Cristwood* action; and (5) Willinger, Shepro, Tower and Bucci, P.C. (Willinger Shepro). Willinger Shepro entered an appearance for Cristwood in the *Cristwood* action in lieu of the appearance of Lecomte Wolfe. When it took over the file on the *Cristwood* action, Willinger Shepro agreed to protect Lecomte Wolf's fee claim in that action. Willinger Shepro additionally has an independent fee claim of its own in the *Cristwood* action.

A number of litigational events occurring since the commencement of the *Cristwood* action must now be described.

On September 11, 1996, Fidelity commenced an action in the United States District Court for the District of Connecticut. *United States Fidelity & Guaranty Co.*

v. *Cristini*, United States District Court, District of Connecticut, Docket No. 3:96-CV-1814 (*Fidelity* action). The *Fidelity* action seeks indemnification and specific performance of a July 13, 1994 surety agreement that Fidelity allegedly has with Cristwood and its owners. As mentioned, Fidelity claims rights to the proceeds of the *Cristwood* action that are superior to those of Merrill Lynch. The *Fidelity* action names Guilford as a garnishee defendant. It seeks an injunction against Guilford, restraining it from transferring proceeds in which Fidelity claims a beneficial interest. The procedural history of the *Fidelity* action need not be recounted in detail. At this point, the United States District Court has ordered Guilford to give Fidelity appropriate notice prior to any settlement of the *Cristini* action, but it has declined to determine the disposition of any settlement funds. The District Court's rulings, however, have been on motions for a preliminary injunction, and the *Fidelity* action is still pending.

On April 23, 1997, Guilford, Cristwood, Merrill Lynch and Netherlands signed an agreement purporting to settle the *Cristwood* action (settlement agreement). Under the settlement agreement, Guilford agrees to pay a total sum of $200,000: $33,713 is to be paid to Netherlands and $166,287 is to be paid to Merrill Lynch. Neither Fidelity, Lecomte Wolf nor Willinger Shepro are parties to the settlement agreement. The settlement agreement has not yet been accepted by the court.

On May 7, 1997, Fidelity notifed Guilford that it "has an interest in the proceeds resulting from any settlement or adjudication" of the *Cristwood* action.

On May 8, 1997, Willinger Shepro notified Guilford that it and Lecomte Wolf had common law liens against any judgment or settlement proceeds from the *Cristwood* action totalling $70,808.

On June 3, 1997, Guilford commenced the present interpleader action. The defendants are Leslie D. Cristini, the owner of Cristwood, Cristwood, Merrill Lynch, Netherlands, Fidelity, Lecomte Wolf and Willinger Shepro. Guilford's first amended interpleader complaint is pleaded in one count. It claims that "[t]here are adverse claims to the settlement proceeds currently being held by the Town of Guilford that must be resolved before the town can disburse such funds." Guilford consequently seeks the remedy of interpleader.

On August 4, 1997, Guilford filed a motion seeking an interlocutory judgment of interpleader pursuant to Practice Book § 539 (1). A hearing was held on October 6, 1997. Merrill Lynch and Fidelity opposed the motion. Lecomte Wolf informed the court that it took no position on the issue. The other defendants did not participate in the hearing.

It is clear after the hearing that the major players in this drama are Guilford, Merrill Lynch and Fidelity. (Lecomte Wolf and Willinger Shepro have important interests as well, of course, but while a full consideration of their interests would add to the complexity of the analysis that follows, it would not change the result.) Their positions can be summarized as follows.

Guilford claims that it has settled the *Cristwood* action for $200,000 and does not care who gets the $200,000 as long as the claimants take it and go away. Guilford does not want to pay money in excess of $200,000 to anyone. The stake, according to Guilford, consists of two checks; one from Guilford to Netherlands for $33,713, and the other from Guilford to Merrill Lynch for $166,287. (No proceeds of any description have actually been deposited in court.)

Merrill Lynch claims that it has settled the *Cristwood* action for $166,287 and that it wants this amount and not a penny less. If it receives less than this amount,

Merrill Lynch claims that the settlement itself will be invalid. In that event, Merrill Lynch will wish to proceed to verdict against Guilford in the *Cristwood* action for the significantly greater sum claimed by the plaintiff in that case.

Fidelity claims an unspecified (but presumably substantial) share of the proceeds of the *Cristwood* action. Any share that it takes must necessarily come from somewhere, to the detriment of Guilford, Merrill Lynch, Netherlands, or all three. If a satisfactory share cannot be taken from the settlement proceeds, Fidelity, like Merrill Lynch, will wish to pursue the significantly greater sum that it feels would become available were the *Cristwood* action to go to verdict.

Guilford, Merrill Lynch, and Fidelity cannot all have what they want. Something, obviously, has to give. Guilford, understandably, finds itself in something of a dilemma under the circumstances. But is this a dilemma that interpleader can appropriately resolve? For the reasons described below, the answer to this question is in the negative.

The statutory requisite to interpleader is that the plaintiff have "money or other property in his possession which is claimed by two or more persons . . . ." General Statutes § 52-484. Guilford has not satisfied this precondition. The assets that Guilford identifies as the subject of this interpleader action—the two checks totalling $200,000—are not necessarily the assets that the defendants claim. The basic problem with this case is that there is no general agreement on the size of the pot. Interpleader is inappropriate under these circumstances.

It is worth recalling, at this point, how different from the typical interpleader case this case is. In the typical

interpleader case, a stakeholder (say an insurance company) will have a specific sum of money (e.g., the proceeds of an insurance policy) in hand and two or more claimants are fighting over that specific sum. See, e.g., *Century Indemnity Co.* v. *Kofsky*, 115 Conn. 193, 161 A. 101 (1932). If someone had written a check *to* Guilford for $200,000, and the claimants here were fighting over that check, interpleader would be an appropriate remedy. But that is not this case. In this case, there is no general agreement on the amount of the stake. A dispute over the *division* of the stake is something that interpleader can handle. A dispute over the *amount* of the stake is beyond the scope of the action.

An essential element of interpleader is that "[t]he same thing, debt, or duty must be claimed by both or all the parties against whom the relief is demanded." 4 J. Pomeroy, A Treatise on Equity Jurisprudence (5th Ed. 1941) § 1322, p. 906; see *Century Indemnity Co.* v. *Kofsky*, supra, 115 Conn. 200. The purpose of interpleader, broadly stated, is "to remedy the problems posed by multiple claimants to a single fund . . . ." *State Farm Fire & Casualty Co.* v. *Tashire*, 386 U.S. 523, 530, 87 S. Ct. 1199, 18 L. Ed. 2d 270 (1967). Here, there is no "single fund." The claimants assert their claims not against the $200,000 identified by Guilford as the stake but against Guilford itself. Under these circumstances, this case cannot be described as one of "multiple vexation directed against a single fund." (Internal quotation marks omitted.) *Indianapolis Colts* v. *Mayor of Baltimore*, supra, 733 F.2d 486; see *Kerite Co.* v. *Alpha Employment Agency, Inc.*, 166 Conn. 432, 437–38, 352 A.2d 288 (1974).

The real problem is that Guilford is not a stakeholder but a contract debtor. Its liability is not limited to the $200,000 stake that it identifies but is, at least theoretically, unlimited. Interpleader is inappropriate under

these circumstances. 4 J. Moore, Moore's Federal Practice (3d Ed. 1997) § 22.03 [1] [d], p. 22–27.

The scope of interpleader has unquestionably been expanded over the years to comport with the demands of justice. *Union Trust Co.* v. *Stamford Trust Co.*, 72 Conn. 86, 91–92, 43 A. 555 (1899). Nevertheless, interpleader "cannot be used to solve all the vexing problems of multiparty litigation . . . ." *State Farm Fire & Casualty Co.* v. *Tashire*, supra, 386 U.S. 535. It was never intended to perform the function claimed by Guilford here, "to be an all-purpose 'bill of peace.' " Id.; see *McLay* v. *Montowese Brick Co.*, 94 Conn. 193, 108 A. 664 (1919). It does not authorize the remedy sought here.

The motion for interlocutory judgment of interpleader is denied.