**NATIONAL CASUALTY COMPANY,**
**Plaintiff,**

v.

**INSURANCE COMPANY OF NORTH AMERICA et al., Defendants.**
**Civ. No. C 64–325.**

United States District Court
N. D. Ohio, E. D.
June 16, 1964.

618

James Olds, Akron, Ohio, for plaintiff.

H. Stephen Madsen, Cleveland, Ohio, J. M. Ulman, Akron, Ohio, Kent Meyers, Cleveland, Ohio, and George Pappas, Akron, Ohio, for defendants.

CONNELL, Chief Judge.

On July 19, 1963, the defendant, Paul H. Sheridan, Jr., who was then acting as the agent of the defendant, Revere Copper and Brass, Inc., was driving his own automobile in the City of Akron, Ohio; at that time, he was involved in a head-on collision with an automobile owned by the defendant, Harold D. Shaffer and occupied by the five members of the Shaffer family who are named as defendants. All of the Shaffers were injured in this collision and three personal injury actions have been brought in the Common Pleas Court of Summit County against Revere Copper and Brass, Inc. for a total of Six Hundred Ninety-Eight Thousand Two Hundred Ninety-Eight Dollars ($698,298.00). Claims have been made by the other Shaffers on which suits have not yet been filed.

At the time of the collision, Sheridan was covered by a standard automobile liability policy issued by the plaintiff, National Casualty Company, with limits of Ten Thousand Dollars ($10,000.00) for injuries to one (1) person, Twenty Thousand Dollars ($20,000.00) for injuries to more than one person and Five Thousand Dollars ($5,000.00) for property damage arising out of one accident. In addition to this policy, Sheridan had an "Excess liability" policy issued by Interstate Fire & Casualty Company which extended the limits of the plaintiff's policy to Fifty Thousand Dollars ($50,000.00) for personal injuries to one person and One Hundred Thousand Dollars ($100,000.00) for injuries to more than one person in the same accident.

At the same time, the Revere Copper and Brass, Inc., was the holder of a policy issued by the defendant, Insurance Company of North America, which covered that company's liability. The extent of the limits of Insurance Company of North America's policy is unknown to the plaintiff.

Investigation of the facts of this accident and of the injuries sustained by the various members of the Shaffer family indicate to the plaintiff that in all probability, the amounts of judgments recovered by the various claimants will be far in excess of the limits of National Casualty Company's policy. National Casualty Company has, therefore, paid into the Clerk of this Court the limits of its liability under its policy, namely Twenty-Five Thousand Dollars ($25,000) and brings this action in interpleader. The plaintiff now prays for relief in the nature of interpleader and seeks an order restraining the proceedings in the state court; the several defendants have moved for a dismissal of the complaint.

For the sake of convenience and to avoid confusion we will refer to the parties in the following manner. The plaintiff in this action applying for interpleader, National Casualty Company, will be called "Applicant" to avoid confusion

with the Shaffers, who are the plaintiffs in the pending actions in Common Pleas Court for Summit County, Ohio. The Shaffers will be referred to as the claimants, since that is their status for purposes of considering the request for interpleader. Similarly, the defendant Educators and Executives Insurance, Inc., which is subrogated to the property damage claim of Harold Shaffer against Paul Sheridan, and/or Revere Copper & Brass Company will also be referred to as a claimant. The secondary insurers, Interstate Fire & Casualty Company and Insurance Company of North America, will be referred to as "Interstate" and "I.N.A.". Revere Copper & Brass Company, the principal upon whose behalf Mr. Sheridan was allegedly acting at the time of the accident, and Mr. Sheridan himself, will be referred to as the insureds.

The action is attacked by the various defendants in light of their particular interests: the defendant insurance companies see this action as an attempt by National to escape its duty to defend these lawsuits, and to accelerate the possible liability of the secondary insurers; the claimants describe this as a last-minute tactic to delay the trial of the first lawsuit which is scheduled for June 15, 1964. The Court is not unmindful of its general policy of comity with State Courts, and we will not interfere with the Courts of Ohio without a clear showing by the plaintiff here that federal action is necessary to prevent an evil at which federal interpleader is directed.

Upon consideration of all briefs proferred by counsel, and after extensive independent research, the Court is directed to seven basic objections to the applicant's prayer for relief: (1) statutory interpleader is inapplicable; (2) Rule 22 is inapplicable because the claims are unliquidated; (3) the applicant has failed to allege or show a lack of an adequate remedy at law; (4) the plaintiff is not a disinterested stakeholder; (5) the Court lacks jurisdiction over the person of Interstate; (6) the applicant is guilty of laches; (7) the applicant is attempting to evade its contractual duty to defend against these claims.

■ The plaintiff, in seeking relief under 28 U.S.C.A. § 1335, has failed to read the statute and fails to appreciate the evil at which statutory interpleader is directed. The Act was passed after much agitation to remedy the dilemma which faced a stakeholder when claimants were citizens of different states and thus not subject to the jurisdiction of a single state court or a single District Court. Thus the first requirement for statutory interpleader is that the *claimants* be of diverse citizenship. Since that requirement is lacking here (all potential claimants are citizens of Ohio), the plaintiff is not entitled to proceed under § 1335.

■ So this action will lie, if at all, under Rule 22 of the Federal Rules of Civil Procedure which provides, in part:

> "Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to *double or multiple liability*."

Under this rule, there must be complete diversity between the plaintiff stakeholder on the one side and the claimants on the other side, and the amount in controversy must exceed $10,000 exclusive of interest and costs. For example, in Hunter v. Federal Life Insurance Company, 111 F.2d 551 (8th Cir. 1940), the Court sustained the jurisdiction of a federal court to entertain an interpleader action where the claimants were all citizens of Arkansas and the stakeholder was a citizen of Illinois, and the amount exceeded the jurisdictional minimum.[1]

1. Although the District Court action in Hunter antedated the adoption of the Federal Rules, it is nonetheless good law on the general question of diversity jurisdiction; moreover there is a succinct yet thorough explanation of the stakeholder's position as a real party in interest and as a party adverse to the claimants in the interpleader action. On the question of diversity, under Rule 22, see

It is contended that the Court lacks jurisdiction over the subject matter because any claim against the tendered fund is at best unliquidated, there are no claims presently pending against the applicant or its insured, and it is a matter of conjectural speculation whether there will in fact ever be a claim against the applicant. In short, the issue is whether this action is premature. Consideration of this problem requires that this Court choose between two apparently irreconcilable positions.

Plaintiff relies upon Pan-American Fire & Casualty v. Revere, 188 F.Supp. 474 (E.D.La.1960), where the insurer was confronted with three claims in suit and the probability of twenty-one more to follow. In disposing of the objection by the claimants that interpleader was not a proper action to adjudicate a series of unliquidated tort claims, the Court rejected the most serious contention which has been advanced here: since the insurer is not directly liable to the claimants, exposure to claims in excess of the policy is remote until those claims have been reduced to judgment.

> "Indeed, under the 'may be exposed' clause of Rule 22 * * * it would not seem to matter how remote the danger might be. But, in any event, prematurity is no defense under the peculiar Louisiana law which allows a direct action against the automobile liability insurer." 188 F.Supp. 474, 482–483.

The quoted passage shows that a significant factor in the Court's dismissal of this objection was the presence of a direct action statute. Under the law of Louisiana,[2] the insurer is considered a joint tortfeasor with its insured and is made a party to the lawsuit; claims had already been filed directly against the insurer which exceeded the policy limits.

In American Indemnity Company v. Hale, 71 F.Supp. 529 (W.D.Mo.1947), the plaintiff-insurer had issued a policy of automobile liability insurance to one Benjamin Hale with limits of $5,000 for personal injury to one person and $10,000 total for each accident, and a property damage limit of $5,000 per accident. The insured Hale was involved in an accident resulting in four claims against him in the aggregate of $160,000. American Indemnity, pursuant to its obligation under the policy, had undertaken the defense of the lawsuits pending in the State Courts; before any came to trial, the insurer brought an action in interpleader and for declaratory relief wherein it sought to restrain the State Court proceedings and to compel the claimants to litigate in the federal court in a single action. The Court denied the prayer for injunctive relief and directed the state court proceedings to continue.

> "To sustain the prayer of plaintiff * * * would be to drag essentially local litigation into the Federal [District] Courts; and, litigation over which this Federal District Court has no jurisdiction. To do so would defeat the jurisdiction of State Courts over such litigation, merely because one of the parties to such litigation happens to have indemnity insurance in a foreign insurance company. * * * If plaintiff here prevails in the defense of such State Court actions then it will not be subject to any liability to the other defendants herein by reason of its issuance of the policy of insurance in question. * * * Whether any one or more of the plaintiffs in the State Court actions

also Stewart Oil Company, v. Sohio Petroleum Company, 315 F.2d 759 (7th Cir. 1963); John Hancock Mutual Life Insurance Company v. Kraft, 200 F.2d 952 (2d Cir. 1953).

2. La.Stat.Ann.–R.S. § 22:655 reads, in part, as follows: " * * * The injured

person or his or her survivors or heirs * * * shall have a right of direct action against the insurer within the terms and limits of the policy in the parish where the accident or injury occurred or in the parish where the insured or insurer is domiciled, and said action may be brought against the insurer alone."

will obtain a judgment against the defendant Hale in excess of the total limit of coverage contained in the policy in question, or any judgment at all, is problematical and left to speculation and conjecture. The question whether defendant will be confronted with claims made against it because of any such judgments, if obtained, can as well be determined after the conclusion of the suits pending in the State Courts as it can now."

In short, there existed no dire circumstance which would have permitted the intervention of equity. It is this Court's opinion that this view is the better one. The powers of equity are weighty, for they are designed to remedy the unusual situation where the strict application of the law would work an injustice. We think that the distinguishing difference between the two cases discussed is the presence of the direct action statute in Louisiana and its absence in Missouri; the absence of such a statute in Ohio leads us to conclude that there is at present no injustice which requires the intervention of equity.

Applying the Missouri statutes, which like the applicable Ohio statute (Ohio Rev.Code § 3929.06) limited a cause of action against an insurer to a judgment creditor, the Court in American Indemnity held that there was no existing adverse claim against the insurer.

"The Statutes of Missouri * * * give to a judgment creditor who has sustained loss on account of bodily injury, a right of action against an insurance company issuing a policy of insurance against such loss or damage. * * * [S]uch a cause of action against the insurer does not accrue in favor of a party entitled to so proceed, until after judgment has been obtained against the insured. Whether and under what circumstances an insurance company can be reached through a judgment obtained against an insured is a question of local state law. Brillhart v. Excess Insurance Co., 316 U.S. 491, 496, 62 S.Ct. 1173, 86 L.Ed. 1620. No claim can possibly be asserted against the plaintiff in this action by the defendants, who are plaintiffs in the State Court actions, until after they have secured a judgment against the defendant Hale."

An integral ingredient in the Court's reasoning in American Indemnity is a policy consideration for which this Court has the greatest respect: comity between State and Federal courts. We do not think that the fact that a defendant against whom multiple claims are or may be lodged is covered by insurance from a non-resident carrier should operate to oust jurisdiction of the State Courts over a matter purely local in nature. Without conducting a semantic search for the intended meaning of the clause "or may be exposed to double or multiple liability" in Rule 22, it is readily apparent to this Court that there must be a reasonable probability that the policy limits would be exhausted while some claims would remain unsatisfied before we can justify an intrusion upon State Court jurisdiction. Unless and until at least one of these claims is reduced to judgment, there is no evidence from which this Court can conclude that that insurer is in danger of facing claims in excess of its policy limits.

Turning to the peculiar aspects of the instant case, we are confronted with even stronger considerations which militate against the applicant. At present there are only three claims pending; all are against Revere Copper & Brass Company, whose insurance is carried by INA and not by the applicant National Casualty Company. Therefore there is *no* danger at present that the applicant will be subjected to *any* claims. Although there are three other claims which have not yet been filed, this Court cannot assume that the other claimants will sue Mr. Sheridan himself, and thus expose the fund of the applicant to possible execution. Thus it appears that the applicant's true purpose in bringing this action is to avoid its contractual duty to defend the pending lawsuits.

622

A copy of the policy written by the applicant on Mr. Sheridan is not before the Court, but language in the complaint (paragraphs 2 and 5) [3] is tantamount to an admission that the applicant will be required to defend the actions brought against Revere unless this Court intervenes. This duty has no relation to the probability of recovery against National and does not form the basis of a claim of "multiple vexation" which would justify this Court's intervention. As stated by the Fourth Circuit Court in American Casualty Company of Reading, Pa., v. Howard, 187 F.2d 322 (4th Cir. 1951):

"The obligation to defend suits is entirely independent of the obligation to pay for bodily injuries and property damage. * * * The defense of such suits by the insurer is a valuable right of the insured for which he pays and to which he is entitled by the very words of the policy."

Under the law of Ohio, if the petition states a claim which is within the ambit of the policy, the insurer is required to make defense regardless of the outcome of the action or the liability to the insured. Lessak v. Metropolitan Casualty Insurance Company of New York, 168 Ohio St. 153, 151 N.E.2d 730 (1958); Socony-Vacuum Oil Company v. Continental Casualty Company, 144 Ohio St. 382, 59 N.E.2d 199 (1945).

We are cited to no Ohio case where the insurer has tendered its policy limits into court and then sought to be relieved of its duty to defend, but other Courts have generally denied such a request. See, e. g. American Casualty case, supra; Anchor Casualty Company v. McCaleb, 178 F.2d 322 (5th Cir. 1949); cf. Risjord & Austin, Obligation of Insurer to Defend After Exhaustion of Policy Limits, 6 Federation of Insurance Counsel Quarterly 18 (1956), for a summary of the authorities. We agree with the position taken by the author in 8 Appleman, Insurance Law and Practice, § 4685:

"[T]he insurer's duty is both to defend actions *and* to pay judgment against the insured. Otherwise, where the damages exceed the policy coverage, the insurer could walk into court, toss the amount of the policy on the table, and blithely inform the insured that the rest was up to him. This would obviously constitute a breach of the insurer's contract to defend actions against the insured, for which premiums had been paid, and should not be tolerated by the courts."

Such action will not be permitted in this Court; we cannot absolve the applicant from its duty to defend.

Although the language of the complaint is imprecise, the applicant in its brief alludes to a request for a declara-

3. "2. Prior to July 19, 1963 the plaintiff issued to the defendant Paul H. Sheridan, Jr. a certain policy of automobile liability insurance by the terms and conditions of which it agreed to insure the said Paul H. Sheridan, Jr. against legal liability for personal injuries and property damages arising from the operation of a 1961 Chevrolet automobile by the said defendant Sheridan, Jr.; that said policy of insurance was limited to the sum of $10,-000 for injuries to one person; $20,000 for injuries to more than one person in each accident; and $5,000 for damages to property. Such policy further provided that the plaintiff would defend any action against said Sheridan, Jr. claiming any liability for injuries or damages covered by the terms of said policy. Such policy also extended the coverage thereof to any person, firm or corporation legally liable for the operation of said Chevrolet automobile by the said defendant Sheridan, Jr. Said policy was in full force and effect on July 19, 1963.

"5. The plaintiff further says that on July 19, 1963 said Paul H. Sheridan, Jr. was operating said 1961 Chevrolet automobile in an easterly direction on U.S. Route 224 in Akron, Ohio while acting in the scope of his employment as an agent and servant of Revere Copper & Brass, Inc.; that at said time and place said Sheridan, Jr. collided with a 1963 Ford Sedan owned by the defendant Harold D. Shaffer, operated by the defendant Lynn K. Shaffer and occupied by the defendants Harold D. Shaffer, Helen J. Shaffer, Jan Shaffer and Susan Shaffer; that all of said occupants sustained personal injuries and that said 1963 Ford Sedan was extensively damaged."

tory judgment that INA and not National Casualty is primarily obligated to defend the three pending suits. This request can hardly be granted when the applicant has not even brought copies of the policies into court. Moreover, as stated above (cf. fn. 3, supra) the applicant has apparently indicated that it is saddled with that responsibility.

Therefore, it is the finding of this Court that the plaintiff has not shown its right to a temporary restraining order, and has not shown its right to declaratory relief. Since there are no present claims against the plaintiff, this Court is without jurisdiction to entertain an action for interpleader. In view of this, it is unnecessary to discuss other grounds advanced by defendants.

Plaintiff's motion for a temporary restraining order is overruled. The defendants' motion to dismiss is granted.