CONTINENTAL INSURANCE
COMPANY, Plaintiff
Below–Appellant,

v.

William J. BURR, Joseph F.X. Burr, Carol
A. Burr, Cheryl A. Pipher, individually
and as the Administratrix of the Estate
of Paul R. Pipher, II, and as next friend
of Sonya M. Pipher and Paul R. Pipher,
III, John M. Nagowski, III, John M. Na-
gowski, Jr., and Cass Nagowski a/k/a
Casimera M. Nagowski, Defendants Be·
low–Appellees.

No. 287, 1997.

Supreme Court of Delaware.

Submitted: Nov. 4, 1997.

Decided: Feb. 5, 1998.

Rehearing Denied March 5, 1998.

See also, 934 F.Supp. 639.

Kevin J. Connors, of Marshall, Dennehey,
Warner, Coleman & Goggin, Wilmington, for
Appellant.

Sherry Ruggiero Fallon (argued) and Todd
M. Finchler, of Tybout, Redfearn & Pell,
Wilmington; Mason B. Turner, Jr., of Prick-
ett, Jones, Elliott, Kristol & Schnee, Wil-
mington; and David Roeberg, of Roeberg,
Moore & Associates, P.A., Wilmington, for
Appellees.

Before VEASEY, C.J., WALSH and
BERGER, JJ.

BERGER, Justice:

The following question of law was certified
by the United States District Court for the
District of Delaware and was accepted by
this Court pursuant to Article IV, § 11(9) of
the Delaware. Constitution and Supreme
Court Rule 41:

Does a liability insurer, which has paid its
policy limits into Court in an interpleader
action with notice to its insured and which
policy limits are apportioned and then dis-
bursed among all potential claimants by
Court Order, have a continuing duty to
defend or indemnify its insured in a subse-
quent civil action where the liability insur-
er has (1) obtained a release or extinguish-
ment of all but one potential claim and (2)
obtained a stipulation from that remaining
claimant, who refuses to sign a general
release in favor of the insured, to set-off
any judgment obtained against the insured

by the sum received in the interpleader action?[1]

Under the facts presented, we hold that the insurer's payment of its policy limits does not relieve it of the duty to defend the insured. The defense of civil litigation is an important part of the protection the insured contracted for when purchasing liability insurance. The insurer may not avoid that obligation by paying out the policy limits in a case such as this, where those payments were insufficient to satisfy all of the claims and the insurer was unable to obtain full releases on behalf of the insured. Accordingly, we conclude that the certified question must be answered in the AFFIRMATIVE.

## I. FACTS

The facts are undisputed. In August 1994, William Burr was driving his parents' automobile when he collided with an automobile driven by Paul R. Pipher, II. Burr also struck two other vehicles, injuring members of the David Durnan family and the Raymond Naton family. Pipher died from the injuries sustained in the accident, and the occupants of the other vehicles were injured. The Burrs were insured by Continental Insurance Co. under an automobile insurance policy with a coverage limit of $300,000 per accident. The policy provides:

1. Defending claims and law suits.

If a claim is made or a lawsuit is brought, we will defend the claim or lawsuit. The claim must be covered by this policy. We will defend the claim or lawsuit even if the claim or lawsuit proves to be groundless, false or fraudulent.

We will pay the expenses we incur in defending a claim or lawsuit. These expenses are in addition to your Limit of Coverage. In defending a claim or suit, we may conduct any investigations we consider necessary. We may make any settlements we consider advisable. However, we are not obligated to:

(a) pay any claim or judgment or;

(b) defend any claim or lawsuit;

when our payments have reached your Limit of Coverage.

In February 1995, before any litigation had been brought against the Burrs, Continental filed an interpleader action in the United States District Court for the District of Delaware and deposited the $300,000 policy limit into the court. Continental named as defendants all parties who might possibly have a claim against the Burrs and it requested that the court not disburse the $300,000 until Continental could obtain releases for the Burrs. The court denied that request and, by a stipulated order, the money was disbursed among the Piphers, the Natons and the Durnans. The Natons signed a general release and the Durnans promised not to present any additional claims against the Burrs. The Piphers, however, agreed only that any amount they might recover against the Burrs in their civil action[2] would be reduced by the $277,500 paid by Continental.

In October 1996, Continental filed the declaratory judgment action that precipitated this certified question. Continental sought a determination that its insurance policy with the Burrs does not obligate Continental to defend or indemnify the Burrs or the Nagowskis in the Delaware Superior Court litigation. Continental moved for judgment on the pleadings. The District Court, recognizing that this is a question of first impression in Delaware, certified the question.

## II. THE INSURER'S DUTY TO DEFEND

The nature and extent of the coverage afforded to an insured is determined by the language of the insurance policy. Generally, an insurance policy is construed, like any other contract, to give effect to the plain meaning of all of its provisions.[3] Because an insurance policy is a contract of adhesion,

---

1. Although the District Court asked whether there is a continuing duty to defend or indemnify its insured, we note that the question begins with the premise that the insurer has paid its policy limits into court. Accordingly, we will not address any issues between the parties as to the extent of coverage available. Rather, we will assume that the policy limits have been paid, and that fact moots the issue of whether or not there is a separate duty to indemnify.

2. The day before the District Court signed the Order distributing the $300,000, the Piphers filed suit in the Delaware Superior Court against the Burrs and the John Nagowski family. John Nagowski, III, was a passenger in the car with Burr at the time of the accident.

3. *Emmons v. Hartford Underwriters Ins. Co.*, Del. Supr., 697 A.2d 742 (1997).

however, ambiguous language is construed most strongly against the insurer, and the policy will be read in a way that satisfies the reasonable expectations of the average consumer.[4]

■ The Continental policy provides two significant forms of protection against liability arising out of an automobile accident. First, Continental promises to pay, up to the limits of its coverage, claims of bodily injury or property damage. Second, Continental promises to defend, at its own expense, any claim covered by the policy. The duty-to-defend provision ends with the caveat that Continental is not obligated to "(a) pay any claim or judgment; or (b) defend any claim or lawsuit; when [its] payments have reached [the] Limit of Coverage." This clause, although written in clear and direct language, fails to explain the types of "payments" that will relieve Continental of its duty to defend. That is the issue presented by the certified question.

Jurisdictions that have interpreted similar policy language generally have held that the duty to defend is not discharged until policy limits are paid to settle all claims or to satisfy a judgment against the insured.[5] Some courts concluded that the policy language clearly required that result[6]; others focused on the expectations of the insured[7]. Under either analysis, the courts were concerned that insurers not be allowed to abandon the insured whenever the value of the claims exceeds the policy limits. More than one court stated the following admonition to uphold the duty to defend:

The insurer's duty is both to defend actions and to pay judgment against the insured. Otherwise, where the damages exceed the policy coverage, the insurer could walk into court, toss the amount of the policy on the table, and blithely inform the insured that the rest was up to him. This would obviously constitute a breach of the insurer's contract to defend actions against the insured, for which premiums had been paid, and should not be tolerated by the courts.[8]

Even in cases where the court found no continuing duty to defend, this public policy concern is evident. In *Johnson v. Continental Insurance Cos.*,[9] for example, three passengers and a passerby were injured when the insured's truck rolled over. At the insured's request, the insurance company paid out the policy limits to settle the four claims. The insured later filed suit against the truck manufacturer, tire retailer, and others on theories of products liability and negligence. When two of the defendants in this subsequent action filed cross-claims, the insured demanded that the insurance company provide a defense.

The *Johnson* court found in favor of the insurance company, holding that the policy language clearly and unambiguously relieved it of the duty to defend upon payment of the policy limits. But the court was careful to distinguish those cases where the insurer attempted to "artificially exhaust" its obligations by tendering policy limits during litigation. It noted that Johnson's insurer had not "[abandoned] Johnson in midcourse or [placed] upon her shoulders the full burden of investigation, settlement, or defense."[10]

4. *Hallowell v. State Farm Mutual Auto Ins.*, Del. Supr., 443 A.2d 925 (1982).

5. *See, e.g., Nationwide Mutual Ins. Co. v. Simmonds*, 315 S.C. 404, 434 S.E.2d 277 (1993); *Aetna Casualty & Surety Co. v. Sullivan*, 33 Mass. App.Ct. 154, 597 N.E.2d 62 (1992); *Anderson v. United States Fidelity & Guaranty Co.*, 177 Ga. App. 520, 339 S.E.2d 660 (1986); *Samply v. Integrity Insurance Co.*, Ala.Supr., 476 So.2d 79 (1985); *Simmons v. Jeffords*, 260 F.Supp. 641 (E.D.Pa.1966); *National Casualty Co. v. Insurance Co. of N. America*, 230 F.Supp. 617 (N.D.Ohio 1964); Annotation, *Liability Insurer's Duty to Defend Action Against an Insured After Insurer's Full Performance of its Payment Obli-*

*gations Under Policy*, 27 A.L.R.3d 1057 (1996 Supp.).

6. *See, e.g., Anderson*, 339 S.E.2d at 661.

7. *See, e.g., Aetna Casualty & Surety Company*, 597 N.E.2d at 64.

8. 8 Appleman, *Insurance Law and Practice*, § 4685 (1942). *See Utah Power & Light Co. v. Federal Ins. Co.*, 711 F.Supp. 1544, 1553 (D.Utah 1989); *National Cas. Co.*, 230 F.Supp. at 622; *Anderson*, 339 S.E.2d at 661.

9. 202 Cal.App.3d 477, 248 Cal.Rptr. 412 (1988).

10. 248 Cal.Rptr. at 417.

Because the Johnson policy and the Burr policy contain the same duty-to-defend provision, Continental argues that we should reach the same conclusions as the *Johnson* court—that the Burr policy language is clear and unambiguous and that Continental has no continuing duty to defend. We decline to adopt Continental's suggested approach, as it ignores the significant factual differences in the two cases. *Johnson* found the policy language unambiguous in context. The accident claims against the insured had been settled, and Johnson "needed" only a defense to cross-claims in a products liability action that she initiated. There was no question in *Johnson* about whether the duty to defend could be extinguished by "payments" that provided no meaningful protection to the insured. Thus, although the *Johnson* holding may have been correct, it does not provide much guidance in this case.

Rather, we address the certified question by reading the duty-to-defend provision from the perspective of the reasonable person purchasing insurance. The provision begins with a promise that the insurance company will defend the insured and that the costs of defense will be borne by the insurer. That is a significant promise, especially since there could be cases where defense costs equal or even exceed the policy limits. The provision ends with a limitation: the duty to defend ends when the insurer's payments reach the policy limits. What does that mean? The insurer can control the timing of its payments, and there are cases, such as this one, where it is apparent from the outset that the claims against the insured will exceed the policy limits. Does the limitation language allow the insurer to tender the policy limits to a court or the claimants, and thereby avoid the additional expense of defending the insured? We think not.

A reasonable policy holder would expect to be defended until claims arising under the policy are resolved, either by settlement or judgment. To read the policy otherwise would be to nullify the duty to defend in those situations where the insured most needs that protection. We are satisfied that our interpretation is consistent with the language of the policy, and we note that it is the prevailing interpretation in other jurisdictions. Applying our holding to the facts presented, we conclude that Continental's duty to defend has not been extinguished. We recognize that Continental made an effort to obtain releases for its insured and that it was successful with respect to some of the smaller claims. The Burrs are still at risk, however, as they are defendants in a wrongful death action brought by Pipher's estate. Accordingly, we answer the certified question in the AFFIRMATIVE.