IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL MEGILL,

        Plaintiff,

    v.

ATLANTIC STATES INSURANCE
COMPANY, a Pennsylvania
insurance company,

        Defendant.

      K20C-06-021 WLW

Submitted: September 17, 2020
Decided: December 16, 2020

ORDER

Upon Defendant's Motion to Dismiss
Count II of Plaintiff's Complaint
*Granted.*

David A. Boswell, Esquire of Hudson Jones Jaywork & Fisher, LLC, Lewes, Delaware; attorney for Plaintiff.

Colin M. Shalk, Esquire of Casarino Christman Shalk Ransom & Doss, P.A., Wilmington, Delaware; attorney for Defendant.

WITHAM, R.J.

Defendant, Atlantic States Insurance (hereafter "Atlantic"), filed a Motion to Dismiss Count 2 of Plaintiff's Complaint pursuant to Superior Court Civil Rule 12(b)(6). The Plaintiff, Mr. Michael Megill (Megill), alleges in Count 2 of his complaint that Atlantic's provision that insureds are limited to filing claims for Uninsured/Underinsured Motorist (hereafter "UM/UIM") coverage to two (2) years after the date of the accident unless the insureds meet two exceptions: (1) violations of Delaware Code § 3902(b) of Title 18 and (2) against public policy. On September 17, 2020, this Court heard oral arguments on the issue of Atlantic's Motion to Dismiss. Based on the record of the case, the arguments of the parties, and the statutory and case law involved, this Court **GRANTS** Atlantic's Motion to Dismiss Count 2 of Plaintiff's Claim.

## Facts and Procedural History

1. The facts of this case are undisputed and are recited as they were presented by the pleadings. On or about August 2, 2018, Megill was involved in an automobile accident while operating a work van associated with Megill's company, M & D Plumbing. The accident resulted in Megill receiving medical treatment that is still on-going. The at-fault driver was insured by a policy that carried with it the minimum limits of bodily liability coverage then permitted by law, $25,000 per person. Megill received advance written acknowledgment and agreement from Atlantic that acceptance of the at-fault driver's settlement of the at-fault driver's policy limit of $25,000 would not affect negatively Megill's claims under his UM/UIM policy with Atlantic. Based on that reassurance from Atlantic, Megill

accepted the tender of $25,000 from the at-fault driver's insurance. On or about November 6, 2019, Megill then executed a release of all claims against the at-fault driver.

2. Megill holds a policy with Atlantic that provides coverage to Megill personally and for the vehicle he was driving on the date of the accident for claims involving UM/UIM up to $300,000. Atlantic issued this policy to Megill covering the time period of May 7, 2018, to May 7, 2019. This policy includes terms that restrict policy holders from claiming UIM coverage beyond two years from the collision unless the policy holder (1) files a timely suit against the at-fault driver, or (2) the policy holder and Atlantic agree to arbitrate.[1] Megill did not claim UIM coverage through his policy with Atlantic because Megill continued to receive treatment for injuries incurred during the accident. On April 26, 2020, Megill asked that Atlantic waive the 2-year limitation, and Atlantic declined to do so. On June 17, 2020, Megill filed a 2-Count complaint against Atlantic.

*Megill's Count 1*

3. Megill's Count 1 against Atlantic is a breach of contract action. In paragraph 23 of his complaint, Megill states that Atlantic is liable under the underinsured motor vehicle coverage provisions of Megill's policy and Title 18, Section 3902(b) of the Delaware Code.[2] The policy provided Megill UIM coverage up to $300,000 per person and per accident and was available to Megill at the time

---

[1] Plaintiff's Response at n 1.
[2] Plaintiff's Complaint at ¶ 23.

3

of the collision on or about August 2, 2018.[3] Count 1 seeks to compel Atlantic to cover Megill's damages up to $300,000 arising out of the collision and exceed the at-fault driver's liability coverage of $25,000.[4]

*Megill's Count 2*

4. Megill's Count 2 is a request for declaratory judgment from this Court declaring Atlantic's 2-year policy limitation running from the date of an accident unreasonable and against public policy.[5] Megill relies on Title 10, Section 8106 and Title 18, Section 3902 of the Delaware Code to support his allegation that Atlantic's 2-year policy limitation is against the purpose of the statute guaranteeing injured parties protection from underinsured at-fault motorists.[6] Megill also relies on Flanagan v. Nationwide, 1989 WL 89537 (Del. Super. July 7, 1989) to support his notion that Atlantic's 2-year policy limitation is against public policy because the limitation period would conclude before the statutory limitation period would even begin to run, which is at the time the demand for UIM coverage is denied by the insurer.[7]

*Atlantic's Motion to Dismiss Count 2*

5. Atlantic filed a Motion to Dismiss Count 2 of Plaintiff's Complaint on July 27, 2020. On August 25, 2020, Megill responded. On September 17, 2020, this Court heard oral arguments of the parties. Atlantic argued that Megill's Count 2 (1)

---

[3] *Id.* at ¶¶ 15 – 16.
[4] *Id.* at ¶ 23.
[5] *Id.* at ¶¶ 34 – 35.
[6] *Id.* at ¶ 26.
[7] *Id.* at ¶ 30.

is an improper request for an advisory opinion; (2) is a moot issue because Megill complied with the policy period of limitations via his claim in Count 1; and (3) there is no actual controversy and the complaint lacks justiciability. Megill framed the issue as being one of anticipatory breach of contract and asserted that Atlantic's policy provision is unreasonable for failing to meet the statutory standards for limits on filing a UM/UIM claim in Delaware and is against public policy.

## Applicable Legal Standard

6. Superior Court Civil Rule 12(b)(6) requires that the movant "bears the burden of demonstrating that 'under no set of facts which could be proven in support of its complaint would the plaintiff be entitled to relief.'"[8] When considering a 12(b)(6) Motion to Dismiss, this Court will accept all well-pleaded facts as true, even vague allegations if the allegations provide the opposing party notice of the claim; will make reasonable inferences as to these well-pleaded facts in favor of the party not moving to dismiss; and will dismiss only where the plaintiff would not be entitled to recovery based on any reasonably provable circumstances.[9] Finally, "conclusions will not be accepted as true without specific allegations of fact to support them."[10]

## Insurance in Delaware

7. Delaware statutory law places the time limitations to bring an action "caused by an injury…resulting indirectly from the act of the defendant shall not be brought

---

[8] *Geo-Technology Associates, Inc.*, 2020 WL 2557139 at *2 (citations omitted).
[9] *Id.*
[10] *Solomon v. Pathe Communications Corp.*, 672 A. 2d 35 at 38 (Del. 1996).

5

after the expiration of 3 years from the accruing of the cause of such action."[11] For the purposes of disputes arising from UIM coverage, Delaware law affords a statute of limitations of three (3) years from the time that the UIM coverage is denied by the insurance company.[12] Delaware treats insurance policies as contracts, and, thus, time limitations to bring an action involving insurance policy disputes do not start to run until the contractual obligation to perform has been denied or the request for insurance coverage has been denied. In Delaware, every insurer is obligated to offer options to purchase coverage for personal injury or death up to $300,000 including additional coverage for under insured bodily injury liability coverage.[13]

8. Delaware views "insurance policies [as] contracts of adhesion."[14] "Because an insurance policy is a contract of adhesion...the policy will be read in a way that satisfies the reasonable expectations of the average consumer."[15] In Delaware, contracts of adhesion can be declared unenforceable by courts if they find the terms to be unconscionable under Delaware statute.[16] To declare a contract unconscionable, whether one of adhesion or not, the "court must find that the party with superior bargaining power used it to take unfair advantage of his weaker counterpart."[17]

---

[11]     10 Del. C. § 8106(a).
[12]     *Flanagan v. Nationwide Ins. Co.*, 1989 WL 89537 *1 (Del. Super. 1989).
[13]     18 Del. C. § 3902(b).
[14]     *Flanagan v. Nationwide Ins. Co.*, 1989 WL 89537 at *2 (Del. Super. 1989).
[15]     *Continental Ins. Co. v. Burr*, 706 A.2d 499 at 500 – 01 (Del. 1998).
[16]     *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908 at 912 (Del. 1989). The statute referenced is 6 Del. C. § 2-302 which details what a court can do to contracts found to be unconscionable and how the parties may prove or disprove claims of unconscionableness.
[17]     *Id.*

6

Insurance policies that have, as a provision, a limit shortening the time in which an insured may bring a claim for UIM coverage must adhere to the public policy goals of the UIM coverage statute or the provisions will be held voidable.[18]

9. An under insured driver is "one for which there may be bodily injury liability coverage in effect, but the limits of bodily injury liability coverage...[is] less than the damages sustained by the [injured party]."[19] Delaware views this statutory definition as "operat[ing] as a prerequisite to a right of recovery from the claimant's underinsurance motorist policy."[20] Delaware has codified this UIM provision because of a public policy desire to "protect innocent persons from impecunious tortfeasors."[21] In advancing this public policy, Delaware Courts have declared void any provision in the insurance policy that is "designed to reduce or limit the coverage to less than that prescribed by Delaware statute, 18 Del. C. § 3902."[22] Finally, the statute has a logical function that first mandates insureds be offered supplemental coverage in the case of bodily harm caused by an UM/UIM vehicle; then second obligates the insured to first exhaust all avenues of recovery both from the UM/UIM

---

[18]     *Flanagan*, 1989 WL 89537 at n. 9.

[19]     18 Del. C. § 3902(b)(2).

[20]     *Nationwide Mut. Ins. Co. v. Williams*, 695 A.2d 1124 at 1126 (Del. 1997) citing *Nationwide Mut. Auto. Ins. Co. v. Peebles*, 688 A.2d 1374 at 1378 (Del. 1997).

[21]     *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL1891000 at *3 (Del. Super. 2014) quoting *Frank v. Horizon Assur. Co.*, 553 A.2d 1199 at 1201 (Del. 1999).

[22]     *Hurst v. Nationwide Mut. Ins. Co.*, 652 A.2d 10 at 12 (Del. 1995) quoting *Frank v. Horizon Assur. Co.*, 553 A.2d 1199 at 1201 - 02 (Del. 1999).

driver as well as "any other 'bodily injury' insurance available to the claimant; and, finally, if necessary, the insurer pays out up to the policy requirements of Sec. 3902.[23]

## Discussion and Analysis

10. At the center of this dispute is the policy provision that limits when an insured can bring a suit against Atlantic under the insured's UM/UIM policy. That provision states:

> Any legal action against us under this Coverage Form must be brought within two years after the date of 'accident'...[unless] (a) the parties enter an agreement to arbitrate; or (b) the insured files a timely suit against the tortfeasor."[24]

<u>Appeals to Public Policy</u>

11. Megill states that the "unnecessary fomentation of premature litigation" caused by the 2-year policy limitation "violates public policy."[25] Megill points to Atlantic's admission that "plaintiffs often file injury suits against tortfeasors in order to comply with the applicable 2-year personal injury statute of limitations," and claims that this is a scenario that, if allowed to commence by insurers, would "flood" Courts with "claims that otherwise may be resolved between an insurer and its policyholder."[26] Because of this, Megill asserts that their request for declaratory judgment should be granted out of public policy concerns.

---

[23]     *Hurst,* 652 A.2d at 13 – 14 (Del. 1995). See also, *Nationwide Mut. Ins. Co. v. Williams,* 695 A.2d 1124 at 1126 (Del. 1997).
[24]     Plaintiff's Response at n 1.
[25]     Plaintiff's Complaint at ¶ 34.
[26]     Pl.'s Response at 5.

12. The other public policy at stake here is what is enshrined by Section 3902 of Title 18 of the Delaware Code, which is "ensuring the availability of uninsured and underinsured motorist coverage" to those harmed by such tortfeasors.[27] However, this statutory protection is predicated on the injured party acting to demand such coverage by that party's insurer. In *Flanagan*, the injured parties in that case made a claim for additional damages under their UIM policy, but the insurer there did not respond to the claim.[28] Although the Court in that case alluded to this not being a denial by the insurer, the act of making a claim by the insured was present. Because of this, the Court found that "the limitation period in the policy expired before the statutory limitation period had even started to run. In these circumstances, the provision in the policy is unreasonable and will not be enforced."[29] "These circumstances" included the act of making that initial claim by the insureds.

13. Megill's circumstances do not include any attempts on his part to make such a claim for UIM coverage. Megill settled with the at-fault driver for the maximum coverage available under the at-fault driver's policy, and then sought a waiver from Atlantic regarding the 2-year policy limitation in his own UIM policy. Megill's explanation for not filing a claim under his UIM policy was that he had not reached maximum medical improvement. However, as Atlantic explained, it is quite common for insureds to file for UIM coverage before ever reaching maximum

---

[27] *Lukk v. State Farm Mut. Auto. Ins. Co.*, 2014 WL1891000 at *3 (Del. Super. 2014) quoting *Frank v. Horizon Assur. Co.*, 553 A.2d 1199 at 1201 (Del. 1999).
[28] *Flanagan*, 1989 WL 89537 at *1.
[29] *Flanagan*, 1989 WL 89537 at *2.

medical improvement. In other words, Megill did nothing to act and, therefore, cannot be said to have accrued a cause of action starting the limitation period to run. Additionally, Megill settled with the at-fault driver after reaching that driver's policy limits within plenty of time to file for UIM coverage before the end of the 2-year policy limitation.

14. In *Flanagan*, the Court explicitly states that there needs to be a denial by the insurer of the insured's claim to UIM coverage in order for there to be a cause of action. Denials are predicated on there being a claim to coverage. However, in *Flanagan*, there was no explicit denial of coverage because there was no response at all to the claim made by the insureds. The implicit ruling of *Flanagan* then becomes, where a policy provision that shortens the statutory limitation period when there is a claim made for coverage by the insured, and when the insurer, in an attempt to circumvent the statutory limitation period which begins when there is a denial, decides simply to not reply until the policy limitation period expires and argues that no claim was made will be found unreasonable and against public policy. It must be stressed that there must be first a claim made by the insured. Megill never made a claim despite having opportunities to do so before the 2-year policy limitation was reached.

Improper Request for Advisory Opinion

15. Megill requests a declaratory judgment from the Court on the grounds that Atlantic's policy provision is "unreasonable under the facts."[30] Atlantic makes the

---

[30] Plaintiff's complaint at 10.

assertion that Megill is requesting an improper advisory opinion through the Declaratory Judgment Act. Although Atlantic acknowledges that this Court has discretion when awarding declaratory judgments, it must do so in accordance with the long recognized criteria that there be an "actual controversy."[31] Atlantic also lays out the four (4) elements Courts must consider when deciding grants of declaratory judgment:

> (1) It must be a controversy involving the rights or other legal relations of the party seeking declaratory relief; (2) it must be a controversy in which the claim of right or other legal interest is asserted against one who has an interest in contesting the claim; (3) the controversy must be between parties whose interests are real and adverse; (4) the issue involved in the controversy must be ripe for judicial determination."[32]

16. The Declaratory Judgment Act is not an instrument used to allow advisory opinions.[33] This Court will not participate in decisions of cases that have either become moot or amount to advisory opinions.[34] Absent a controversy meeting the criteria listed above, rendering an advisory opinion would be exactly what this Court would offer. "Before the court should declare the rights of parties in a dispute, it must not only 'be convinced that litigation sooner or later appears to be unavoidable,'

---

[31] Def.'s Mot. to Dismiss at 5.

[32] *Id.* citing *XL Specialty Ins. Co., et al. v. WMI Liquidating Trust*, 93 A.3d 1208, 1215 (Del.2014).

[33] *Stroud v. Milliken Enterprises, Inc.*, 552 A. 2d 476 at 479 (Del. 1989); quoting *Ackerman v. Stemerman*, 201 A. 2d 173 at 175 (Del. 1964).

[34] *Stroud*, 552 A. 2d at 480; citing *State v. Mancari*, 223 A. 2d 81 at 82 – 83 (Del. 1966).

but also that the material facts are static and that the rights of the parties are presently defined rather than future or contingent."[35]

17. Both Megill and Atlantic admit that there is not an actual controversy in this case. Megill states this with regard to Count 1 in his response to Atlantic's motion, and Atlantic states that there is no actual controversy in Count 2 because Megill has complied with the policy provision. If there is no breach, which is the cause of action for Count 1, and there is compliance with the policy provision, which is the basis for Megill claiming there is a breach, then it cannot be said that there is a controversy in this case. Absent an actual controversy, Atlantic's arguments that Count 2 is both moot and not justiciable are supported by the admissions of Megill.

Atlantic Argues Megill's Claim is Moot

18. The doctrine of mootness applies when a controversy between parties no longer exists and there could be no relief which a court could grant.[36] The Court maintains discretion to hear a moot case where the harm could be repeated, and yet, evade review if dismissed when there exists a "sufficient personal stake" in the case moving forward.[37] Furthermore, if the litigant continues to suffer harm despite the controversy being made moot, "[a] justiciable controversy remains."[38]

---

[35] *Stroud*, 552 A. 2d at 481 (internal citations omitted).

[36] *B/E Aerospace, Inc. v. J. A. Reinhardt Holdings, LLC*, 2020 WL 4195762 at *2 (Del. Super. July 21, 2020); quoting *State Farm Mut. Auto. Ins. Co. v. Davis*, 80 A. 3d 628 at 632 (Del. 2013) (internal citation omitted).

[37] *B/E Aerospace, Inc.*, 2020 WL 4195762 at *2; quoting *Stratton v. American Independent Ins. Co.*, 2011 WL 3812570 at *3 (Del. Super. Aug. 12, 2011).

[38] *B/E Aerospace, Inc.*, 2020 WL 4195762 at *2; quoting *NAMA Hldgs., LLC v. Related World Market Center, LLC*, 922 A. 2d 417 at 435 (Del. 2007).

19. Atlantic's claim of mootness is based on the fact that Megill complied with the very contractual provisions for which Megill now seeks declaratory judgment. This compliance, Atlantic explains, removes any notion of there being in existence a controversy or claim for which this Court can grant relief under Count 2 of the complaint. Atlantic argues that since there is no controversy, there is no reason to strike the policy provision as void or unenforceable because to do so would "have no effect whatsoever on this case."[39]

20. Megill counters that he had to file Count 1 because failure to do so would lead to him being prevented from filing a UIM claim by the 2-year limitation provision of his policy because he had not reached maximum medical improvement. As Megill explained in his response, "The extent of his damages is unknown and unknowable at present. He therefore cannot make a claim for underinsured motorist benefits against Defendant yet."[40] Atlantic's response is that Megill's inability to know the extent of the treatment he needs to reach maximum medical improvement would not preclude him from filing a claim for UIM coverage under his policy and notes that this assertion is supported by Megill reaching a settlement with the at-fault driver "despite any uncertainty in his medical condition."[41] Megill maintains that "there was no need for [Megill] to reach maximum medical improvement for both he and the [at-fault driver's] auto insurer to know that his claims exceeded the [at-fault

---

[39]      Defs.' Mot. to Dismiss at 4.
[40]      Plaintiff's Response at 3.
[41]      Def.'s Mot. to Dismiss at 3.

driver's] coverage."[42] How can it be so that Megill knows enough about his injuries to warrant settling on the basis that they exceed $25,000 but not know enough about them to file a claim for UIM coverage under his policy?

21. In fact, Megill could have opened a UIM claim on his policy the moment the at-fault driver's liability coverage limit was reached without waiting to reach maximum medical improvement. Atlantic's motion explains that, contrary to Megill's assertion that not reaching maximum medical improvement prevents him from making a UIM claim, filing before reaching an improved condition is "common in personal injury litigation - undefined damages based upon his present medical condition."[43]

22. Megill admits that no controversy exists with regard to breach of contract "because Defendant has yet to be called upon to perform."[44] Megill's fears that Atlantic will not honor its obligation as the insurer are further discredited by the fact that Megill has not made an attempt to demand that Atlantic perform. As the facts rest at this moment, even if Megill's request for declaratory judgment was granted, Megill would still be in the exact same position because he has not made a claim under his policy with Atlantic. This Court can find that the basis for Count 2 is moot. There is no reason for a declaratory judgment, because there is no controversy to cause Megill harm.

Justiciability

---

[42]     Plaintiff's Response at 7.
[43]     Def.'s Mot. to Dismiss at 3.
[44]     Plaintiff's Response at 4.

23. Mootness and justiciability are similar in that both call on the Court to determine whether "the dispute is currently concrete enough to justify adversarial litigation."[45] Again, relying on the notion that a lack of controversy removes jurisdiction from this Court, Atlantic claims that this case is "not ripe for judicial determination under the procedural posture, facts, and applicable law."[46]

24. Megill points out that there are facts and applicable law that make this case justiciable. First, Megill relies on this Court's ruling in *Flanagan v. Nationwide*, which found that policy limitations that run counter to Delaware statute limitations violate public policy. In *Flanagan*, the deciding factor was when the statutory limitation period begins to run versus when the policy limitation began. In *Flanagan*, identical to this case, the policy limitation began to run on the date of the automobile accident and expired after two years. However, *Flanagan* would help Megill if the facts there were similar to the facts here. In *Flanagan*, the plaintiffs/insureds "claimed additional damages under the underinsured motorist coverage of their policy,"[47] but here, the only action taken by Megill with regard to his UIM coverage has been to ask Atlantic to waive the 2-year limitation period of the policy. This distinction is important because the statutory language, as well as the language in *Flanagan*, require that there be a demand for coverage and a denial, since the insurer cannot deny that which has not been demanded. Megill attempts to conflate the facts of his case with the facts of *Flanagan*, but it simply cannot be done where there is a

---

[45] *B/E Aerospace, Inc.*, 2020 WL 4195762 at *2.
[46] Defs.' Mot. to Dismiss at 7.
[47] *Flanagan*, 1989 WL 89537 at *1.

15

claim for additional coverage by the insureds and no response from the insurer and one where there has been no claim, no demand, and thus no denial. As this Court stated in *Flanagan*, "[t]he cause of action accrues when the insurance company denies the claim."[48]

25. As such, this case cannot be said to possess a ripe controversy for this Court to resolve because there has not been a cause for action by Atlantic. Megill states, "Count 2 is not only an actual controversy; at this time, it is the only dispute or controversy between the parties which is ripe and justiciable."[49] However, Megill's request for relief of this sort is predicated on there being a Count 1, which Megill willingly admits is not a "justiciable case or controversy."[50] Megill further admits that "there is not yet a ripe case or controversy regarding breach of contract" under Count 1.[51] Without a cause of action, i.e., a controversy, Megill is requesting an advisory opinion rather than a declaratory judgment.

## Conclusion

26. Delaware law is clear that the statutory limitations for bringing a cause of action against an insurer regarding a UIM claim brought by the insured does not begin to run until after there is a denial of UIM benefits by an insurer. However, ignoring a claim by the insured will result in declaring policy provisions that shorten the statutory limitations period unreasonable and against public policy. Neither

---

[48] *Flanagan*, 1989 WL 89537 at *1.
[49] Plaintiff's Response at 7.
[50] *Id.* at 5.
[51] *Id.* at 4.

16

scenario can be reviewed until there is a claim to coverage because there must be a cause of action to bring before the Court.

27. Atlantic's claims of improper request for advisory opinion, mootness, and lack of justiciability are admitted to by Megill. Advisory opinions will not be made by this Court and there are no controversies to which Megill can point to prompt this Court to elevate the current case to the level of making a declaratory judgment.

28. Count 1 of Megill's complaint is an action against Atlantic for breach of contract for lack of performance; however, Megill admits that it has not asked Atlantic to perform. Count 2 is a request for declaratory judgment rendering Atlantic's policy limitations period of 2 years as unreasonable and against public policy. Megill states that the only Count that matters is Count 2, but this Count is dependent on there being a controversy since Count 2 asks for a declaratory judgment. Having admitted that there is no controversy, and that the first count of his complaint has no merit, Megill cannot receive a declaratory judgment from this Court.

**WHEREFORE**, this Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's Count 2.

**IT IS SO ORDERED.**

*/s/ William L. Witham, Jr.*
Resident Judge

WLW/dmh

17