Richard MARCUS, Plaintiff,

v.

Olga DUFOUR, Lawrence Haaker, David Haaker, Suzanne Perloth, and Lisa Goldberg, Defendants.

No. 10–cv–1716 (ADS)(AKT).

United States District Court, E.D. New York.

July 8, 2011.

Nutter McClennen & Fish LLP, by: Christopher H. Lindstrom, Esq., George A. Xixis, Esq., of Counsel, Boston, MA, for Plaintiff, Richard Marcus.

Covington & Burling LLP, by: Jason Paul Criss, Esq., Damara Chambers, Esq., Joanne Sum–Ping, Esq., Kevin J. Shortill, Esq., of Counsel, New York, NY and

Washington, DC, for Defendant, Olga Dufour.

Brodegaard Simone LLC, by: Emilie Simone, Esq., Robert F. Brodegaard, Esq., of Counsel, New York, NY, for Defendants, Lawrence Haaker, David Haaker, Suzanne Perloth, and Lisa Goldberg.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff in this case, Richard Marcus, commenced this interpleader action to resolve conflicting claims to a stake of $228,349.28 that he has now deposited with the Court. One of the claimants to this stake, the defendant Olga Dufour, has now moved for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) granting her the full stake. The remaining claimants, the defendants Lawrence Haaker, David Haaker, Suzanne Perloth, and Lisa Goldberg (collectively, the "Haaker Claimants") oppose this motion. For the reasons that follow, the Court grants Olga Dufour's motion for judgment on the pleadings. In addition, the Court discharges the plaintiff from the case, and awards the plaintiff reasonable attorneys' fees and costs associated with this case.

## I. BACKGROUND

The defendants in this interpleader case dispute the proper distribution of a reparations award that was issued in the name of Olga Dufour to compensate her for crimes committed under Austrian National Socialism during the Second World War. In short, the defendant Olga Dufour asserts the right to her full award of $228,349.28, while Dufour's two nieces and two nephews, the Haaker Claimants, contend that they are collectively entitled to half of that award.

By way of background, on January 17, 2001, the Austrian government established a $210 million fund to compensate victims of past Nazi persecution in Austria. The formation of this fund was driven by American-led international negotiations. Finalization of the fund required that persons suing Austrian parties in United States courts for Nazi-era crimes abandon those suits in favor of the newly-formed claims process. *See Whiteman v. Dorotheum GmbH & Co. KG*, 431 F.3d 57, 62–63 (2d Cir.2005).

Approximately two years after the fund was established, in January 2003, the plaintiff Richard Marcus filed a claim for compensation with the fund (referred to as the "General Settlement Fund" or the "GSF") on behalf of himself, two of his brothers, and a more distant relation, Olga Dufour. The GSF ultimately awarded to Richard Marcus and his two brothers payments of $79,028 to each, and awarded Olga Dufour payment of $228,363.28 (the actual interpleader stake of $228,349.28 reflects payment of a $14 transfer fee). The awards to Richard Marcus and his brothers are undisputed; the award to Dufour constitutes the stake in this interpleader action.

The awards to Richard Marcus, his brothers, and Olga Dufour are derived from the estates of three people: a married couple named Anna and Hugo Marcus, and their only daughter, Susanne Marcus. All three were victims of Austrian National Socialism. At their death, the estates of Anna and Hugo Marcus passed in their entirety to Susanne Marcus, who then died unmarried, without issue, and intestate. However, Susanne Marcus had a number of living cousins at the time of her death, who became her heirs. Richard Marcus and Olga Dufour are descendants and heirs of those cousins.

Specifically, Olga Dufour's connection to the estate of Anna, Hugo, and Susanne Marcus is through her grandfather, a man named H. Goldsmith. Goldsmith was apparently a cousin-of-a-cousin of Susanne Marcus, and was entitled to a portion of her estate. Goldsmith's heir was his daughter, a woman named Amy Furmansky, who was the mother of Olga Dufour. Amy Furmansky died on January 8, 2003, either shortly before or shortly after Richard Marcus submitted the application for an award from the GSF. Amy Furmansky's will left her entire estate to Olga Dufour.

When Amy Furmansky died, her only living child was Olga Dufour. However, Furmansky had another daughter, Ilsa Haaker, who had died in 1995. Ilsa Haaker, in turn, had four children: the defendants Lawrence Haaker, David Haaker, Suzanne Perloth, and Lisa Goldberg. It is the Haaker Claimants' assertion that, in spite of Amy Furmansky's will, they are entitled to half of the $228,363.28 award granted by the GSF to Olga Dufour. An illustrative and abbreviated genealogical chart appears below:

On June 10, 2009, the GSF issued a final decision on the application filed by Richard Marcus, granting awards to him, his two brothers, and Olga Dufour. On February 17, 2010, the GSF then transferred the entirety of this award into an account designated by Richard Marcus. However, before Richard Marcus distributed Olga Dufour's portion of the award to her, the Haaker Claimants made clear that they asserted a right to half of Olga Dufour's award. Thus, rather than distribute the $228,363.28, Richard Marcus commenced this interpleader case on April 12, 2010, depositing the $228,363.28 stake with the Court on or about January 7, 2011.

Following the commencement of the case, both Olga Dufour and the Haaker Claimants answered the plaintiff's complaint. Olga Dufour claimed a right to the full stake, while the Haaker Claimants claimed a right to half of the stake, and asserted a cross-claim against Olga Dufour. On November 18, 2010, Olga Dufour then moved for judgment on the pleadings and, in the alternative, to dismiss the Haaker Claimants' cross-claim. In response, the Haaker Claimants moved to

amend their answer and cross-claim. By stipulation dated March 1, 2011, Olga Dufour consented to the Haaker Claimants' amendment, and withdrew her motion without prejudice. On March 16, 2011, following the Haaker Claimants' amendment of their pleadings, Olga Dufour again moved for judgment on the pleadings and, in the alternative, to dismiss the Haaker Claimants' cross-claim. In the interim, the plaintiff had moved on December 28, 2010: (1) to deposit the interpleader stake, (2) to be discharged from this case, and (3) to be awarded attorneys' fees and costs in connection with this case. The Court granted the motion to deposit the stake on January 7, 2011, but did not rule on the remainder of the plaintiff's motion, which is unopposed.

In her answer and claim in interpleader, Olga Dufour maintains that she is the rightful sole heir of Amy Furmansky, and that the GSF recognized this right in awarding the $228,363.28 solely and directly to her. By contrast, the Haaker Claimants assert in their cross-claim and opposition to Dufour's motion that they are entitled to half of that award because: (1) while the GSF was presented with a copy of Furmansky's will, it was never given a fully probated version of the will; (2) the award was made after Furmansky had died, and under New York estate law, a person's will generally only distributes assets that he or she possessed at the time of death; (3) Richard Marcus obtained Olga Dufour's award through fraud by failing to timely advise the GSF of Amy Furmansky's death, and (4) Richard Marcus obtained Olga Dufour's award through fraud by failing to notify the GSF of the existence of the Haaker Claimants. Olga Dufour challenges each of these assertions.

## II. DISCUSSION

### A. As to the Plaintiff's Motion for Discharge and for Attorneys' Fees and Costs

As a preliminary matter, the Court now rules on the plaintiff's unopposed motion for discharge and for an award of reasonable attorneys' fees and costs associated with this case.

Generally, once an interpleader plaintiff has satisfied the jurisdictional requirements of an interpleader claim, the Court will discharge the plaintiff from liability and dismiss him from the case. *See New York Life Ins. Co. v. Connecticut Development Authority,* 700 F.2d 91, 95 (2d Cir.1983); *Locals 40, 361 & 417 Pension Fund v. McInerney,* No. 06–cv–5224 (JFK), 2007 WL 80868, *3 (S.D.N.Y. Jan. 9, 2007). To determine the jurisdictional elements of an interpleader claim, federal district courts look to 28 U.S.C. § 1335. Under this statute, a plaintiff that commences an interpleader action must first allege that he is in possession of a single fund of value greater than $500. *Bankers Trust Co. v. Manufacturers Nat. Bank of Detroit,* 139 F.R.D. 302 (S.D.N.Y.1991) (citing to *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967)). Second, the plaintiff must allege "a real and reasonable fear of double liability or vexatious, conflicting claims," *Washington Elec. Co-op., Inc. v. Paterson, Walke & Pratt, P.C.,* 985 F.2d 677, 679 (2d Cir.1993), against the single fund, "regardless of the merits of the competing claims." *Fidelity Brokerage Servs., LLC v. Bank of China,* 192 F.Supp.2d 173, 177 (S.D.N.Y.2002); *see also Locals 40, 361 & 417 Pension Fund,* 2007 WL 80868 at *3. Finally, pursuant to the plain language of Section 1335, a plaintiff must state that he has deposited or is depositing the fund with the court.

Here, the Court finds that the plaintiff Richard Marcus has satisfied all of these requirements. As such, the Court grants his motion to be discharged from the case.

In addition, the plaintiff seeks an award of attorneys' fees and costs associated with this case. In general, a reasonable award of fees and costs to a plaintiff in an interpleader case is appropriate where the Court finds that the plaintiff is "(1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Septembertide Pub., B.V. v. Stein and Day, Inc.,* 884 F.2d 675, 683 (2d Cir.1989). Here, the Court finds that all four of these elements are satisfied. Considering this compliance with the relevant law, along with the equities in this case and the fact that no party opposes an award of fees and costs to the plaintiff, the Court finds that such an award is appropriate. The award shall be paid out of the corpus of the interpleader stake, and the parties are directed to appear before the Court on Thursday, July 21, 2011 at 9:30 a.m. to address the appropriate amount for this award of attorneys' fees and costs.

## B. As to Olga Dufour's Motion for Judgment on the Pleadings

### 1. Legal Standard on a Motion for Judgment on the Pleadings

Olga Dufour has moved for judgment on the pleadings pursuant to Fed. R.Civ.P. 12(c), claiming that she is entitled to the entirety of the interpleader stake. In general, "the standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir.2006). The Court therefore applies the Rule 12(b)(6) standard in deciding Olga Dufour's present motion. However, the Court applies that standard not to the complaint, but rather to the Haaker Claimants' pleading, which asserts a right to a portion of the interpleader stake.

Under the now well-established *Twombly* standard, a pleading should be dismissed under Rule 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills,* 572 F.3d 66 (2d Cir.2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a [pleading],' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1949). " 'Second, only a [pleading] that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a [pleading] states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal,* 129 S.Ct. at 1950). Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal,* 129 S.Ct. at 1950.

In addition, in deciding Dufour's motion, the Court considers a number of documents submitted by the parties that are incorporated by reference in the complaint or the Haaker Defendants' pleading. *See, e.g., Blue Tree Hotels Inv. (Canada), Ltd.*

*v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004). These include (1) the application submitted by Richard Marcus to the GSF, (2) the decision by the GSF granting the award to Dufour, and (3) additional correspondence between the GSF and Richard Marcus concerning the award.

### 2. As to the Parties' Assertions Regarding the Motion for Judgment on the Pleadings

■ Olga Dufour asserts that, based on the pleadings and the documents incorporated by those pleadings, she is entitled to be awarded the entire interpleader stake. The thrust of Dufour's argument in support of her motion is that the GSF's decision awarding her the $228,363.28 should be enforced, not only because it is entitled to deference under the principles of international comity, but also because it was fairly and properly decided. The Court agrees.

■ The doctrine of international comity remains vaguely defined in federal law, but a number of principles do affect a domestic court's decision as to whether to enforce a decision entered by a foreign court or body. First, as a general matter, "the doctrine is premised upon a respect for the acts of another nation balanced by a recognition of international duty and convenience, and consideration for the rights of a nation's own citizens and others under the protection of its laws." *Bodner v. Banque Paribas,* 114 F.Supp.2d 117, 129 (E.D.N.Y.2000) (citing *Laker Airways Ltd. v. Sabena Belgian World Airlines,* 731 F.2d 909, 956 (D.C.Cir.1984)). More specifically, foreign decisions are generally not enforced if they were procured by fraud or decided by an unfair foreign court system. *See Diorinou v. Mezitis,* 237 F.3d 133, 139 (2d Cir.2001) (citing *Hilton v. Guyot,* 159 U.S. 113, 203–

29, 16 S.Ct. 139, 40 L.Ed. 95 (1895) and *Bridgeway Corp. v. Citibank,* 201 F.3d 134, 141–42 (2d Cir.2000)). By contrast, a foreign decision will generally be enforced when a court is satisfied that it was procured fairly and honestly. *See Ungaro–Benages v. Dresdner Bank AG,* 379 F.3d 1227, 1238 (11th Cir.2004) ("federal courts evaluate three factors [in applying the principles of international comity]: (1) whether the foreign court was competent and used 'proceedings consistent with civilized jurisprudence,' (2) whether the judgment was rendered by fraud, and (3) whether the foreign judgment was prejudicial because it violated American public policy notions of what is decent and just").

Here, the Court finds that, based on the principles of international comity, the GSF's decision should be enforced. First, the GSF itself was established through negotiations with the American government to resolve claims for reparations based on Nazi-era persecutions in Austria. *Whiteman,* 431 F.3d at 62–63. Thus, its decisions are entitled to at least some level of deference in "recognition of international duty and convenience". *Bodner,* 114 F.Supp.2d at 129; *see also Whiteman,* 431 F.3d at 74–75. More importantly, the Court is satisfied that the GSF's decision in this case was both fairly decided and not the product of fraud.

The Haaker Claimants do not deny that, in general, the GSF's decisions may be entitled to deference. However, they challenge the award to Olga Dufour on the grounds that the GSF's decision was *not* fairly decided, and that it *was* the product of fraud.

With respect to the issue of fairness, the Haaker Claimants make two arguments, both related to Amy Furmansky's will. The first argument, which the Haaker Claimants assert in their pleading but not in their motion papers, is that the GSF

was never provided a copy of Amy Furmansky's fully probated will, and that the GSF therefore should have treated Amy Furmansky as having died intestate. Under the GSF's rules concerning intestacy, the Haaker Claimants would have then been entitled to half of the award that was granted to Olga Dufour.

The Haaker Claimants' decision to ignore this theory in their motion papers is consistent with the Court's view on this issue. There is no dispute that the GSF was provided a copy of Amy Furmansky's will, and that this will remained unchanged after final probate. Thus, even assuming that a fully probated will was never provided to the GSF, the Court finds that this would not invalidate the GSF's decision.

■■■ The Haaker Claimants' second basis for claiming that the GSF's decision was unfair is more nuanced. The Haaker Claimants begin by noting that the GSF did not grant any award to Olga Dufour until more than six years after Amy Furmansky had died, and that Amy Furmansky's will makes no mention of the award. Next, the Haaker Claimants point out that New York Estates, Powers and Trusts Law ("EPTL") § 3–3.1 states that, "unless the will provides otherwise, a disposition by the testator of all his property passes all of the property he was entitled to dispose of at the time of his death." Importantly, "[t]he corollary principle [to EPTL § 3–3.1] recognized by the courts is that property not owned by the testator at the time of his death is not subject to disposition by will." *Shaw Family Archives Ltd. v. CMG Worldwide, Inc.*, 486 F.Supp.2d 309, 315 (S.D.N.Y.2007). Thus, the Haaker Claimants conclude that, because Amy Furmansky did not own the award at the time of her death, the GSF should have treated the award as if Amy Furmansky died intestate. Under the GSF's rules, the result would be to divide the award evenly

between Olga Dufour, on one hand, and the Haaker Claimants on the other hand.

While this argument has some facial appeal, it grants too broad an effect to the application of New York's EPTL. To be sure, the parties cite to little precedent that directly addresses the situation presently before the Court. Nevertheless, there is no ruling stating that the GSF should be bound by New York's trusts and estates law in awarding reparations payments. Given the unique nature of atoning for crimes committed over a half-century ago, in the Court's view it is rational and sensible for the GSF to indulge in the legal fiction that persons who died before awards were made *would have* assigned this property through their wills if they had possessed it. In fact, to do otherwise would result in disregarding virtually *all* of the testamentary documents of deceased persons whose wills are governed by New York law or similar statutes. *Compare Nordwind v. Rowland*, 584 F.3d 420, 430 (2d Cir.2009) (discussing how a German law resolved this problem by awarding reparations based on a determination of "those persons who ultimately *would have* inherited the property had it not been illegally confiscated" (emphasis in original)). Thus, the Court finds that the EPTL does not preclude the GSF from giving effect to Amy Furmansky's will, which provided that the remainder of her estate—and thus the reparations award—goes to Olga Dufour.

With respect to the Haaker Claimants' assertion that the GSF's award should not be enforced because it was procured by fraud, the Haaker Claimants allege that Richard Marcus both (1) failed to timely inform the GSF of Amy Furmansky's death, and also (2) failed to inform the GSF that the Haaker Claimants existed. The first of these assertions is readily resolved. The GSF's final decision award-

ing reparations plainly acknowledges Amy Furmansky's 2003 death. There is no indication that any alleged delay in informing the GSF of Amy Furmansky's death affected that decision. Thus, the Court concludes that, even assuming that Richard Marcus failed to timely inform the GSF of Amy Furmansky's death, this does not render invalid the GSF's decision.

By contrast, the alleged failure of Richard Marcus to inform the GSF of the existence of the Haaker Claimants presents a closer question. Ultimately, however, the Court determines that, even assuming the truth of the Haaker Claimants' allegation, the failure to disclose the existence of the Haaker Claimants did not affect the outcome of the GSF's decision. The provision of the GSF's decision critical to this issue states that "[Amy Furmansky] died in 2003, leaving her entire estate to her daughter Olga Dufour, who therefore inherits 5/18 [of the estate] from [Anna, Hugo, and Susanne] Marcus". (Answer of Olga Dufour, Ex. D at 2–5.) Although the GSF's treatment of the issue is brief, the Court finds that the phrase "leaving her entire estate to her daughter Olga Dufour" indicates that the GSF granted Olga Dufour the award based on the provisions of Amy Furmansky's will. Therefore, the GSF's knowledge of the Haaker Claimants' existence would be immaterial to its distribution of the award, as the Haaker Claimants are not mentioned in Amy Furmansky's will. Thus, any failure to inform the GSF of the Haaker Claimants' existence similarly does not invalidate the GSF's decision.

■ Finally, the Court briefly addresses two other more generalized objections by the Haaker Claimants to the Court's enforcement of the terms of the GSF's decision. First, the Haaker Claimants cite to what appears to have been a similar dispute between the Haaker Claimants and Olga Dufour in 1996 over a reparations award for Nazi persecution victims from a group of Swiss banks. The Haaker Claimants assert that the court in that case decided that their claim against Olga Dufour was valid, but refer only to a document stating that the parties had settled the dispute. As such, the Court finds that this argument is without merit. Not only are the facts of that case different, but a settlement does not have any *res judicata* effect on later cases. *See Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000).

Second, the Haaker Claimants assert that the GSF itself indicated in the paperwork that accompanied its decision that it was the responsibility of the heirs of Anna, Hugo, and Susanne Marcus to distribute the proceeds of the estate themselves. In particular, the Haaker Claimants cite to the first page of a letter dated September 4, 2009 from the GSF to Richard Marcus concerning the award. An image of the relevant excerpt appears below:

Co-heirs The final payment made to you will also include amounts in respect of your co-heirs, whose inclusion in the procedure you had applied for. The payments due to your co-heirs have likewise been calculated as a percentage of the recognized claims on the basis of their respective inheritance shares.
You will find enclosed the official decision of the Claims Committee regarding the losses of your co-heirs.

Amount of the payment The final payment will amount to

| | |
|---|---|
| for Richard D. Marcus (applicant) | USD 79,082.78 |
| for George Marcus (co-heir) | USD 79,082.78 |
| for Stephen F. Marcus (co-heir) | USD 79,082.78 |
| for Olga Dufour (co-heir) | USD 228,363.28 |
| Total sum | USD 465,611.61 |

The total amount, i.e. the amounts which are due to you and those which are due to your co-heirs, will be transferred to you. Please note that we can transfer the amount only to one account. It is up to you together with your co-heirs to distribute the amount between yourselves. The General Settlement Fund cannot and must not take care of this matter.

(Answer of Olga Dufour, Ex. E at 1.) The Haaker Claimants read the GSF's admonition that "it is up to you together with your co-heirs to distribute the amount between yourselves" to be an invitation to any *potential* heirs of Anna, Hugo, and Susanne Marcus to re-litigate among themselves who should receive what portion of the total award. The Court does not agree with this interpretation of the GSF document.

In the Court's view, the GSF's letter unambiguously establishes the proper distribution of the award being issued to Richard Marcus, which includes the sum of $228,363.28 to be distributed to Olga Dufour. The Court also finds that the letter's reference to the distribution of the award to "co-heirs" refers solely to the "co-heirs" named in the letter, who are limited to Olga Dufour and the brothers of Richard Marcus. In short, the GSF delegated to Richard Marcus the responsibility for distributing the awarded funds to his brothers and to Olga Dufour. The GSF did *not* a delegate its determination of who is rightfully entitled to those payments. The Haaker Claimants' objection on this ground is therefore without merit.

In light of the foregoing, the Court grants Olga Dufour's motion for judgment on the pleadings. The Court directs the Clerk of the Court, upon the final determination of an appropriate award of fees and costs to the plaintiff, to pay to Olga Dufour the entirety of the interpleader stake in this case, *plus* any and all interest that has accrued while those funds were in the Court's possession, *less* the final award of attorneys' fees and costs granted to the plaintiff.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the plaintiff's motion for discharge is granted; and it is further

**ORDERED** that the plaintiff's motion for an award of reasonable attorneys' fees and costs is granted, and the parties are directed to appear before the Court on Thursday, July 21, 2011 at 9:30 a.m. to address the issue of the appropriate award; and it is further

**ORDERED** that the defendant Olga Dufour's motion for judgment on the pleadings is granted, and Olga Dufour is awarded the entirety of the interpleader stake in this case, *plus* any and all interest that has accrued while those funds were in the Court's possession, *less* the final award of attorneys' fees and costs granted to the plaintiff; and it is further

**ORDERED** that after the final determination of the appropriate fees and costs, the Clerk of the Court is respectfully directed to mark this case closed.

**SO ORDERED.**